972 F.2d 357
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Loree J. STOCKARD, Plaintiff,
and
Debra L. Blair, Plaintiff-Appellee,
v.
RED EAGLE RESOURCES CORPORATION, Defendant-Appellant.
 Nos. 90-6393, 91-6226.
 United States Court of Appeals, Tenth Circuit.
 July 27, 1992.
 
 1
 Before EBEL and BARRETT, Circuit Judges, and KANE,* Senior District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 JOHN L. KANE, Jr., Senior District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 5
 In appeal No. 90-6393, Defendant Red Eagle Resources Corp. appeals the entry of judgment in the amount of $21,080.00 in favor of Plaintiff Debra Blair on her Title VII claim. Defendant contends that the court erroneously concluded as a matter of law that an employer can never discharge an employee for excessive absenteeism if the employee's absences are caused by her pregnancy, and that the court erroneously failed to cut off Defendant's liability for back pay when Plaintiff accepted part-time employment and stopped searching for full-time employment. In appeal No. 91-6226, Defendant appeals the amount of attorney's fees the district court awarded to Plaintiff on her successful claims. We affirm.
 
 
 6
 I. Liability (No. 90-6393).
 
 Title VII declares that
 
 7
 [i]t shall be an unlawful employment practice for an employer ... to fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
 
 
 8
 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress added a definitional section to Title VII, known as the Pregnancy Discrimination Act, which provides in part that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." Id. § 2000e(k).
 
 
 9
 As with other Title VII claims, a plaintiff alleging discrimination on the basis of pregnancy may proceed under either a disparate impact or a disparate treatment theory. Scherr v. Woodland Sch. Community Consol. Dist. No. 50, 867 F.2d 974, 979 (7th Cir.1988). If she proceeds under a disparate treatment theory, like Ms. Blair, the plaintiff may prove her disparate treatment theory by using either direct or indirect evidence. See Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 153 (1st Cir.1990). If the plaintiff uses indirect evidence, the court will apply the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). Under that analysis, if the plaintiff meets her initial burden of establishing a prima facie case of discrimination, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. The burden of persuasion ultimately rests with the plaintiff, however, who must prove that the defendant intentionally discriminated against her. Bell v. AT & T, 946 F.2d 1507, 1509-10 (10th Cir.1991). "A plaintiff may succeed in a Title VII action 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' It is firmly established that this evidence may 'take a variety of forms.' " Luna v. City & County of Denver, 948 F.2d 1144, 1148 (10th Cir.1991) (citations omitted).
 
 
 10
 Defendant apparently concedes that Ms. Blair met her initial burden of establishing a prima facie case, but argues that it articulated a legitimate reason for discharging Ms. Blair--excessive absenteeism. Defendant contends that the district court determined as a matter of law, however, that Ms. Blair's absenteeism could not be a legitimate reason for her discharge because it was caused by her pregnancy. We disagree.
 
 
 11
 The district court found that Ms. Blair's position "was one with periodic deadlines which made dependability and timely performance of assigned tasks essential job qualifications," and that her absenteeism because of morning sickness during the two months prior to her discharge was a factor in her discharge. Findings of Fact and Conclusions of Law, Appellant's App. at 62. The court further found, however, that Ms. Blair "was an able and competent employee[;] [a]lthough deadlines existed, no deadlines were missed." Id. at 63. The court ultimately determined that Ms. "Blair's pregnancy as manifested through the related medical condition which caused her to be absent from work was the determinative and motivating factor in Plaintiff Blair's termination." Id. (Emphasis added.) Thus, the court did not reject Defendant's articulated business reason as a matter of law. Rather, the court apparently found that the articulated reason was a pretext for discrimination because it found that Defendant discharged Ms. Blair because of her pregnancy.
 
 
 12
 We disagree with Red Eagle Resources that the district court concluded as a matter of law that absenteeism can never be a legitimate reason for discharge if the absenteeism is caused by an employee's pregnancy. The district court found that Ms. Blair's pregnancy was the determinative and motivating factor in her discharge, and the evidence of record supports this determination. Even if the district court erred in considering evidence of how Red Eagle Resources treated Cliff Baggett in comparison to how it treated Ms. Blair, there was other evidence in the record to support the district court's ultimate finding of discrimination.
 
 
 13
 II. Damages (No. 90-6393).
 
 
 14
 Defendant contends that the district court erred in awarding Ms. Blair back pay in the amount of $20,800.00. While Defendant acknowledges that Ms. Blair was entitled to some back pay, it argues that her right to receive back pay should have ended when she accepted part-time work and stopped looking for full-time employment.
 
 
 15
 The amount of back pay to award a successful plaintiff in a Title VII suit is committed to the trial court's discretion. Whatley v. Skaggs Cos., 707 F.2d 1129, 1138 (10th Cir.), cert. denied, 464 U.S. 938 (1983). "Absent an abuse of that discretion, the appellate court will not disturb the trial court's determination." Id.
 
 
 16
 "Unquestionably, wrongfully discharged claimants have an obligation to use reasonable efforts to mitigate their damages." EEOC v. Sandia Corp., 639 F.2d 600, 627 (10th Cir.1980). "A claimant is required to make only reasonable exertions to mitigate damages, [however,] and is not held to the highest standards of diligence." United States v. Lee Way Motor Freight, Inc., 625 F.2d 918, 938 (10th Cir.1979). "Further, mitigation requires not success in finding alternate employment, but only a reasonable exertion to mitigate damages." Whatley, 707 F.2d at 1138 (citation omitted).
 
 
 17
 The employer bears the burden of showing that the employee did not exercise reasonable efforts to mitigate damages. Lee Way Motor Freight, Inc., 625 F.2d at 937. We have held that to satisfy its burden, the employer must establish " '(1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.' " Sandia Corp., 639 F.2d at 627 (quoting Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir.1978)).
 
 
 18
 Defendant made the same argument on the limitation of back pay to the district court that it makes here. Although the district court did not make an express finding that Ms. Blair acted reasonably in mitigating her damages, we can imply such a finding from the district court's finding that Ms. Blair was entitled to the full amount of back pay she requested. The court's back pay determination is fully supported by the record.
 
 
 19
 The evidence showed that after she was discharged, Ms. Blair applied for unemployment compensation and continued to look for full-time employment, without success, until she gave birth to her child in early December. Sometime in January of 1989, Ms. Blair spoke with her father-in-law, who indicated that a part-time secretarial position in his architectural firm would be opening soon. Ms. Blair then stopped looking for full-time employment. Ms. Blair took the part-time job in her father-in-law's company in April, working from 1:00 to 5:00 p.m. In June, Ms. Blair acquired two more part-time jobs, doing bookkeeping for her father-in-law's firm and cleaning an office building.
 
 
 20
 Defendant argues that Ms. Blair voluntarily accepted part-time work and stopped looking for full-time employment because part-time employment better suited her child care arrangements. The evidence simply does not support this argument. While Ms. Blair was able to make arrangements for her child that allowed her to work three part-time jobs, the evidence did not suggest that she chose part-time employment over full-time employment to suit her child care arrangements. Furthermore, Ms. Blair did not act unreasonably by accepting several part-time jobs and stopping her search for full-time employment after she had fruitlessly searched for full-time employment for many months. See Smith v. American Serv. Co. of Atlanta, Inc., 796 F.2d 1430, 1432 (11th Cir.1986) (after searching unsuccessfully for full-time employment for seven months, plaintiff acted reasonably in enrolling in cosmetology school and accepting part-time employment); Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1275 (4th Cir.1985) (after searching unsuccessfully for comparable work for one year, plaintiff acted reasonably in accepting lower paying job and ceasing his search for higher paying job). We therefore affirm the district court's award of back pay on Ms. Blair's Title VII claim.
 
 
 21
 III. Attorney's Fees (No. 91-6226).
 
 
 22
 In addition to her Title VII claim, Ms. Blair pursued claims against Defendant for violations of the Fair Labor Standards Act (FLSA) and the Employee Retirement Income Security Act (ERISA), as well as pendent state claims for invasion of privacy and intentional infliction of emotional distress. Ms. Loree Stockard, Ms. Blair's co-plaintiff, also pursued claims against Defendant for wrongful termination based on pregnancy in violation of Title VII, and for violations of the FLSA and ERISA, as well as pendent state claims for invasion of privacy and intentional infliction of emotional distress. The district court entered summary judgment against both Plaintiffs on their state law claims and Plaintiffs abandoned their ERISA claims prior to trial. Plaintiffs tried their Title VII and FLSA claims to the court. The court entered judgment in favor of both Plaintiffs on their FLSA claims, entered judgment in favor of Defendant on Ms. Stockard's Title VII claim, and entered judgment in favor of Ms. Blair on her Title VII claim.
 
 
 23
 Both Plaintiffs originally sought attorney's fees for the claims on which they prevailed, but later abandoned their request for fees on their FLSA claims. Therefore, the only request for fees on which the district court ruled was Ms. Blair's request for fees incurred on her Title VII claim. The magistrate judge held an evidentiary hearing on the fee request and then issued a Recommendation and Report. After reviewing the Recommendation and Report, as well as Defendant's objections to it, the district court adopted the magistrate judge's findings and conclusions and awarded Ms. Blair the amount of fees recommended. Because the district court adopted the findings and conclusions contained in the Recommendation and Report, we will refer to them as the findings and conclusions of the district court.
 
 
 24
 A district court may award attorney's fees to a prevailing party in an action brought to enforce federal civil rights laws. 42 U.S.C. § 1988. We will reverse a district court's award of fees to the prevailing party only if it represents an abuse of discretion. Igbal v. Golf Course Superintendents Ass'n of Am., 900 F.2d 227, 228 (10th Cir.1990). Furthermore, we must accept the district court's subsidiary findings of fact unless they are clearly erroneous. Id.
 
 
 25
 The district court properly found that Ms. Blair was the prevailing party on her Title VII claim. Defendant does not dispute that Ms. Blair was entitled to a fee award, it merely challenges the amount of the award she received. Specifically, Defendant argues that when calculating the lodestar amount, the district court committed clear error by finding that Ms. Blair's counsel adequately separated "raw" time from "billable" time. Defendant also argues that the district court's ten percent downward adjustment in the lodestar amount was not adequate to account for Ms. Blair's limited success on her claims.
 
 
 26
 In evaluating the district court's rulings, we are guided by the Supreme Court's opinion in Hensley v. Eckerhart, 461 U.S. 424 (1983), which sets forth the proper analysis to follow in calculating a reasonable fee under § 1988. First, the court must calculate the lodestar amount, which is comprised of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433. Counsel seeking attorney's fees must keep sufficient time records for the court to determine which hours were reasonably expended on the case. Ramos v. Lamm, 713 F.2d 546, 553 (10th Cir.1983). "When scrutinizing the actual hours reported, the district court should distinguish 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended." Id.
 
 
 27
 Because Plaintiffs' counsel represented both Plaintiffs on a contingency basis, counsel's records did not clearly designate the number of hours spent on the respective claims of each Plaintiff. Counsel testified, however, that the fee request excluded over sixty hours of time that counsel identified as having been spent either on Ms. Stockard's claims or on Ms. Blair's unsuccessful claims. Defendant argues that counsel nonetheless failed to reduce the "raw" hours adequately to account for (1) the duplication of effort required when an associate left the firm one month before trial and a new associate began assisting lead counsel on the case, (2) the new associate's lack of experience, and (3) the performance of duties by paralegals that could have been performed by secretaries.
 
 
 28
 The record contains evidence to support the district court's determination that Ms. Blair's counsel adequately reduced their "raw" time in calculating their "billable" time. The lead counsel testified that although the new associate was not as experienced in Title VII cases as the one who left, she did have prior experience in employment law, and her role in the trial was limited. Therefore, the new associate did not have to become well versed in employment law or the factual details of the case to assist at trial. Furthermore, while the number of hours the new associate spent on the case were proportionately greater than those spent by the previous associate, the increase was attributable to the normal increase of activity associated with trial preparation and presentation. Finally, the tasks billed by paralegals that Defendant contends should have been performed by secretaries and not billed appear to be tasks commonly performed by paralegals.
 
 
 29
 The district court had before it a copy of counsel's unedited billing sheets, as well as the fees request submitted, and counsel's testimony on the fee request. Based on the record before it, the court found that it could distinguish "raw" time from "billable" time adequately. We cannot say that this finding was clearly erroneous.
 
 
 30
 After determining the lodestar amount, a court must consider whether an upward or downward adjustment is appropriate. Hensley, 461 U.S. at 434. One of the factors to consider is the result the moving party obtained on the merits. "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Id. In evaluating whether the lodestar amount should be adjusted when the prevailing party obtained only partial success, the court must consider two questions: (1) whether the claims on which the plaintiff did not prevail were related to those on which the plaintiff did prevail; and (2) whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id.
 
 
 31
 If the claims on which the plaintiff did not prevail were based on facts and legal theories unrelated to the claims on which the plaintiff did prevail, then the court must treat those unsuccessful claims as though they were brought in a different suit and may not award fees for the time spent pursuing them. Id. at 434-35. If the unsuccessful and successful claims were based on related facts or legal theories, however, the district court should not regard them as discrete claims. Rather, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 435.
 
 
 32
 "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 435-36. In determining an appropriate reduction in the lodestar amount to account for only partial success, a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." Id. at 436-37.
 
 
 33
 This court has upheld the use of a percentage reduction in fees to account for partial success on the merits. See, e.g., Igbal, 900 F.2d at 228. The Supreme Court, however, has cautioned that in reducing fees a court should not use a purely mathematical approach that simply compares the number of successful claims pursued to the number of unsuccessful claims pursued and reduces the award accordingly. Hensley, 424 U.S. at 435 n. 11. Furthermore, this court has held that a court should not reduce fees based solely on the amount of money recovered on the successful claims. Ramos, 713 F.2d at 557.
 
 
 34
 On appeal, Defendant argues that neither Ms. Stockard's claims nor Ms. Blair's nonTitle VII claims were closely related to Ms. Blair's Title VII claim. The district court, however, found that the facts and issues in the other claims that Plaintiffs' counsel pursued were closely related to Ms. Blair's Title VII claim. The district court also found that Plaintiffs' counsel presented evidence that Ms. Blair's Title VII claim was the main claim in her case, and her other claims were minor and did not require much time to pursue. Based on the record before us, we cannot say that the district court's findings were clearly erroneous.
 
 
 35
 After considering the guidelines outlined in Hensley and Ramos and noting that Defendant suggested the court apply "an across-the-board percentage reduction in the requested fee, due to the inability to determine how much inappropriate time is claimed in the application," Recommendation and Report, Appellant's App. at 272, the district court reduced the amount of fees requested by ten percent. The court found that "[i]n light of the adjustments already made by Plaintiff's counsel and in light of the fact that the facts and issues are closely related," a ten percent reduction in the fees sought "would amply account for any additional time spent by Plaintiff's counsel on [Plaintiff] Stockard's claims or on the claims on which Plaintiff Blair was not successful and which were not necessarily spent in the prosecution of her Title VII claim." Id. at 277. Although Defendant argues on appeal that "[a] mere ten percent reduction of the lodestar ... could not possibly account for time spent on all the plaintiffs' unrelated, unsuccessful claims," Brief of Appellant at 19, the record before us does not establish that the district court's decision to reduce the lodestar amount by only ten percent constituted an abuse of discretion.
 
 
 36
 Ms. Blair's counsel testified that the only time spent on Ms. Stockard's claims that was included in the fee request was time counsel would have spent anyway, even if counsel had represented only Ms. Blair on her Title VII claim. Counsel also testified that the fee request did not include any time spent on the summary judgment motions relating to the pendent state claims or on the ERISA claims. Counsel opined that the pendent state claims, though unsuccessful, were closely related to the Title VII claims. Defendant presented testimony from an attorney experienced in litigating Title VII cases who opined that representing one instead of two similarly situated plaintiffs in a Title VII action required thirty-five percent less time. He also opined that Ms. Blair's fee request should be reduced by ten percent based on counsel's inadequate documentation, and should be reduced by an additional ten percent to account for time spent on the pendent state law claims. The witness admitted on cross-examination, however, that all of his numbers were "arbitrary." Hearing Transcript, Appellee's Supplemental App. at 85-87. Because the district court's ten percent reduction of the lodestar amount to account for time spent on unsuccessful claims not otherwise eliminated from Ms. Blair's fee request does not appear to be an abuse of discretion based on the record before us, we must affirm the district court's award of attorney's fees to Ms. Blair.
 
 
 37
 Ms. Blair has requested an award of fees for time spent prosecuting these appeals. An appellate court may award a prevailing plaintiff the costs and fees incurred in successfully defending the merits of her action, as well as her fee award, and we conclude an award is appropriate here. See Love v. Mayor, City of Cheyenne, 620 F.2d 235, 237 (10th Cir.1980) (plaintiff who prevails on appeal in civil rights action is entitled to attorney's fees for work done on appeal); Igbal, 900 F.2d at 229-30 (attorney's fees may be awarded to prevailing plaintiff in appropriate case for time spent litigating entitlement to fee). Accordingly, we remand this matter to the district court to calculate the costs and fees to be awarded Ms. Blair for her counsel's work in these appeals.
 
 
 38
 The judgments of the United States District Court for the Western District of Oklahoma in Nos. 90-6393 and 91-6226 are AFFIRMED, and the action is REMANDED for a calculation of costs and fees to be awarded Ms. Blair for these appeals.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3