Somer CHIPMAN, et al., Plaintiffs,

v.

**GRANT COUNTY SCHOOL DISTRICT,** et al., Defendants.

Civil Action No. 98–180.

United States District Court, E.D. Kentucky.

Dec. 29, 1998.

Sara L. Mandelbaum, David A. Friedman, A.C.L.U. of Kentucky, Louisville, KY, for Plaintiffs.

Donald J. Ruberg, Suzanne Cassidy, O'Hraa, Ruberg, Taylor, Sloan & Sergent, Covington, KY, for Defendants.

## MEMORANDUM OPINION AND ORDER

BERTELSMAN, District Judge.

This is a Title IX, 20 U.S.C. Sections 1681–88, action for discrimination in educational programs. In addition, plaintiffs allege that defendants violated their state and federal constitutional rights to equal protection and unduly interfered in their state and federal rights to privacy and personal autonomy.

The matter is now before the court on the motion of plaintiffs for a preliminary injunction. No other issues will be discussed at this time.[1] All parties declined to present any evidence and the matter is submitted to the court on the record, including the affidavits of several individuals.

The plaintiffs are Somer Chipman and Chasity Glass. The defendants are the Grant County School District, James Simpson, Superintendent of Grant County School District, and members of the Grant County Board of Education, namely, James Colson, Marvin Smoot, Janet Faulkner, Jim Jones and Billie Cahill.

## FACTS

The National Honor Society of Secondary Schools (NHS) recognizes high school students for outstanding achievement. High schools may establish a local NHS chapter upon paying a chartering fee and annual initiation fee to the NHS. Chapters are required to adopt the NHS constitution, but each chapter may establish different admission criteria so long as those criteria are consistent with the NHS constitution. A pertinent provision of the NHS handbook provides:

> It should be noted that, under provisions of federal law, pregnancy—whether within or without wedlock—cannot be the basis for automatic denial of the right to participate in any public school activity. It may properly be considered, however, like any other circumstance, as a factor to be assessed in determining character as it applies to the National Honor Society. But pregnancy may be taken into account in determining character only if evidence of paternity is similarly regarded.

NHS handbook at 29, attached to doc. # 14 as exh. 2.

Grant County High School has established a local NHS chapter. As required by the

---

1. Other claims are presented in the pleadings, but it is necessary for the court to consider only Title IX in granting the preliminary injunction.

It is not contested that students have a private right of action under Title IX. *Doe v. Claiborne Cty.*, 103 F.3d 495, 513 (6th Cir.1996).

NHS constitution, those offered admission to the Grant County NHS must demonstrate outstanding scholarship, service, leadership, and character. Although the NHS permits anyone with a grade point average of 3.0 or better to be considered for admission, the Grant County chapter requires a grade point average of at least 3.5.

Plaintiffs are both seniors at Grant County High School. Both plaintiffs have grade point averages substantially above 3.5. On April 23, 1996, Chasity Glass gave birth to a daughter. On June 1, 1998, Somer Hurston (nee Chipman) gave birth to a daughter. As early as November 1997, it was generally known around Grant County High School that Ms. Hurston was pregnant. In the Spring of 1998, when plaintiffs were juniors, the GCNHS selection committee voted to offer NHS membership to every junior with a 3.5 or better grade point average except the plaintiffs. There is strong evidence that the GCNHS selection committee considered the fact that each plaintiff had engaged in premarital sexual activity and had given birth to a child out of wedlock. There is further strong evidence that the selection committee did not ask those students offered admission to the NHS—male or female—if they had engaged in premarital sexual activity.[2] However, the evidence before the court indicates that the committee would have considered any evidence of paternity in evaluating the character of male students, but that it was unlikely that any such knowledge would come before the committee in any way but rumor and gossip.

## ANALYSIS

### 1. Standards for Preliminary Injunction.

When entertaining a motion for a preliminary injunction, a court must consider the following factors:

(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Kallstrom v. City of Columbus,* 136 F.3d 1055, 1067 (6th Cir.1998)(quoting *McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453, 459 (6th Cir.1997)). None of these factors is mandatory, but the court must balance these criteria in determining whether a preliminary injunction should issue. *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions,* 134 F.3d 749 (6th Cir.1998). Consideration of these factors indicates that the plaintiffs' motion for preliminary injunction should be granted.

### 2. Likelihood of Success on the Merits.

Of the factors listed above, probability of success is the most important.

Title IX prohibits sex discrimination in any educational program or activity receiving federal financial assistance. Specifically, Title IX provides in part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). Regulations promulgated under Title IX unequivocally apply its prohibition against sex discrimination to discrimination on the basis of pregnancy and parental status, stating:

A recipient [of federal funds, such as Grant County Schools] shall not apply any rule concerning a student's actual or potential parental, family, or marital status which treats students differently on the basis of sex.

34 C.F.R. § 106.40(a).

34 C.F.R. § 106.40(b) specifically provides:

(b) Pregnancy and related conditions. (1) A recipient shall not discriminate against any student, or exclude any student from its education program or activity, including any class or extracurricular activity, on the basis of such student's pregnancy, child-

---

2. The court certainly does not suggest they should have done so.

birth, false pregnancy, termination of pregnancy, or recovery therefrom, unless the student requests voluntarily to participate in a separate portion of the program or activity of the recipient.[3]

The issue, then, is whether refusing to admit the plaintiffs to the GCNHS because they engaged in premarital sex and became pregnant constitutes exclusion "on the basis of pregnancy." Three prior cases have addressed the issue of exclusion from a NHS chapter due to pregnancy or premarital sexual activity.

In the most recent of the three and the only circuit court decision on this issue, the court determined that the plaintiff was dismissed from the NHS not because she became pregnant but because she had engaged in premarital sex. *Pfeiffer v. Marion Ctr. Area Sch. Distr.*, 917 F.2d 779 (3rd Cir.1990). In *Pfeiffer*, the court concluded that, as long as both genders were treated similarly with regard to premarital sex, the pregnant student could properly be dismissed from the NHS because "[r]egulation of conduct of unmarried high school student members is within the realm of authority of the National Honor Society given its emphasis on leadership and character." *Pfeiffer*, 917 F.2d at 784. The court emphasized the requirement that the genders be treated similarly when it remanded the case to the trial court for consideration of testimony from a male student that he had fathered a child while a member of the NHS, yet had not been asked to resign from the chapter. *Id.* at 785–786.

In an earlier case from the Central District of Illinois, the court reached a contrary conclusion. In *Wort v. Vierling*, Case No. 82–3169, slip op. (C.D.Ill. Sept. 4, 1984), *aff'd*, 778 F.2d 1233 (7th Cir.1985), the court concluded that the plaintiff had been dismissed from the National Honor Society on the basis of her pregnancy rather than the premarital sex that resulted in the pregnancy. Therefore, because only women can become pregnant, the dismissal necessarily constituted unequal treatment based on gender and violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

Finally, in *Cazares v. Barber*, Case No. CIV–90–0128–TUC–ACM, slip op. (D.Ariz. May 31, 1990), the court encountered a relatively clear-cut case of gender discrimination. In that case, an otherwise eligible pregnant girl was denied entry into the NHS, but a male student who had fathered a child out of wedlock was accepted into the chapter. With little discussion, the court in that case determined that the plaintiff's denial of membership in the NHS violated both Title IX and the Fifth Amendment to the Constitution (the school in question was located on an Indian reservation and operated by the Bureau of Indian Affairs).

The court agrees with the two latter cases.

In the view of the court, based on the record now before it, plaintiffs' probability of successfully proving pregnancy discrimination is very high using either a disparate impact or disparate treatment method of proof.

## A. Disparate Impact

■ The Title IX regulation quoted above unequivocally prohibits pregnancy discrimination by the defendants. Although its language is somewhat different, its purpose is generally the same as the Pregnancy Discrimination Act. *Compare Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1154 (7th Cir. 1997)(the Pregnancy Discrimination Act amended Title VII to clarify that pregnancy discrimination is included in Title VII's prohibition on sex discrimination) and *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 784 (3d Cir.1990)("regulations promulgated pursuant to Title IX specifically apply its prohibition against gender discrimination to discrimination on the basis of pregnancy"). Therefore, the court believes precedents under the Pregnancy Discrimination Act are applicable here.

Use of a disparate impact theory for proving discrimination is well recognized in pregnancy cases. *Ilhardt*, 118 F.3d at 1156–57; *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810 (5th Cir.1996); *Smith v. F.W. Morse & Co. Inc.*, 76 F.3d 413 (1st Cir.1996); *Stockard v. Red Eagle Resources Corp.*, 972 F.2d 357, 1992 WL 180131 (10th Cir.1992)(unpub-

---

**3.** Defendants concede the applicability of these    regulations.

lished); *Scherr v. Woodland Sch. Community Consol. Dist. No. 50,* 867 F.2d 974 (7th Cir.1988).

It has long been recognized that the anti-discrimination laws prohibit "both overt discrimination, as well as practices that are fair in form but discriminatory in operation." *U.S. v. City of Warren, Mich.,* 138 F.3d 1083, 1091 (6th Cir.1998).

■ The plaintiff's burden in a disparate impact case "is to prove that a particular ... practice has caused a significant adverse effect on a protected group. (Citations omitted) Once the plaintiff establishes the adverse effect, the burden shifts to the [defendant] to produce evidence that the challenged practice is a ... necessity." *Id.* at 1091–2.

It is not necessary to prove intentional discrimination when a disparate impact theory is used. *International Brotherhood of Teamsters v. U.S.,* 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396, n. 15 (1997); *McConico v. Cincinnati Gas & Elec. Co.,* 114 F.3d 1188, 1997 WL 242091 (6th Cir.1997)(unpublished); *Hartsel v. Keys,* 87 F.3d 795 (6th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 683, 136 L.Ed.2d 608, 65 USLW 3456 (1997); *Grant v. General Motors Corp.,* 908 F.2d 1303 (6th Cir.1990); *Lynch v. Freeman,* 817 F.2d 380 (6th Cir.1987); *Sharif by Salahuddin v. New York State Educ. Dep't.,* 709 F.Supp. 345 (S.D.N.Y.1989) and cases cited therein.

■ When a disparate impact analysis is applied to the evidence now of record in the instant case, the balance tips decidedly in favor of the plaintiffs.

The plaintiffs have met their burden of proving that the challenged practices of the defendants in screening students for admission to the NHS has caused a significant adverse effect on the protected group, i.e., young women who have become pregnant from premarital sex and have become visibly pregnant.

Statistically, 100% of such young women are not admitted to the GCNHS. Although the defendants argue that they are not basing their decision on pregnancy, but rather on non-marital sexual relations, the disparate impact on young women such as the plaintiffs is apparent.

Although 100% of young women who are visibly pregnant or who have had a child out of wedlock are denied membership, as far as the record reflects, defendants' policy excludes 0% of young men who have had premarital sexual relations and 0% of young women who have had such relations but have not become pregnant or have elected to have an early abortion.

The defendants claim that they would also exclude such students from the NHS membership but none have ever come to their attention. It may be that the discriminatory impact resulting from this policy is unintentional but, as stated above, proof of intentional discrimination is not required under a disparate impact theory.

The plaintiffs having met their initial burden of showing the significant adverse impact of defendants' policy, the burden now shifts to the defendants to show that the challenged practice is a reasonable necessity.

The defendants have not met such burden on the record now before the court. There are many alternate means to assess the character of candidates for membership in the NHS by non-discriminatory criteria.

Therefore the court holds that plaintiffs' probability of success herein is very high using a disparate impact theory.

### B. Disparate Treatment

■ The court also concludes that plaintiffs have a high probability of success on the more common disparate treatment theory.

■ Under this theory, a plaintiff seeking to prove discrimination must first prove that she is a member of a protected class who has been treated differently because of her sex or, in this case, because of pregnancy. *Wallace v. Pyro Mining Co.,* 951 F.2d 351, 1991 WL 270823 (6th Cir.1991)(unpublished). Here, plaintiffs must prove they were treated differently than similarly situated non-pregnant students. *Id.See also, Garcia v. Woman's Hosp. of Texas,* 143 F.3d 227 (5th Cir. 1998); *Dodd v. Riverside Health Sys., Inc.,* 76 F.3d 392, 1996 WL 29246 (10th

Cir.1996)(unpublished). That these prerequisites have been met here is obvious.

■ The burden then shifts to the defendant to articulate legitimate, non-discriminatory reasons for its action. *Herron v. International Ass'n of Bridge,* 134 F.3d 371, 1998 WL 45483 (6th Cir.1998)(unpublished)(*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Kline v. TVA,* 128 F.3d 337 (6th Cir.1997); *McConico v. Cincinnati Gas & Elec. Co.,* 114 F.3d 1188, 1997 WL 242091 (6th Cir.1997)(unpublished). If the defendant is successful, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the non-discriminatory reason is a pretext for discrimination. *Id.* The burden of persuasion, however, remains on the plaintiff throughout. *Id.* If, however, the trier of the fact disbelieves the proffered non-discriminatory reason, it may draw an inference of discriminatory intent. *Kline,* 128 F.3d at 349. *Accord Frizzell v. Southwest Motor Freight,* 154 F.3d 641, 647 (6th Cir.1998).

Considering solely the evidence in the present record, the court must find that the defendants here have failed to articulate a legitimate credible non-discriminatory reason for their NHS pregnancy policy. The reasons articulated for the exclusion of the plaintiffs are vague, conclusory and undocumented. In the face of the admitted fact that plaintiffs were the only students surpassing the grade cutoff who were excluded, the court on the present record finds these proffered non-discriminatory reasons insufficient and not credible. Therefore, an adverse inference of intentional discrimination arises.

Accordingly, the court finds that there is also a high likelihood of success on the merits by the plaintiffs under the disparate treatment theory.

In the light of the above analysis, the court finds it unnecessary to address the other issues raised by the parties.

### 3. *Irreparable Injury and Other Factors.*

■ It is undisputed that this is the only time in these girls' lives that they will be seniors in high school with the opportunity to participate in NHS activities. Therefore, if an injunction does not issue, these girls will lose this opportunity forever. In addition, the plaintiffs will be unable to list NHS membership on their college admission applications and on financial aid applications. Accordingly, the plaintiffs will suffer some irreparable injury if the injunction does not issue. Also, the plaintiffs have undeniably suffered and are presently suffering emotional distress as a result of the defendants' policy.

The defendants contend that forcing them to admit plaintiffs to the GCNHS during the pendency of this action will deprive them of their right to enforce conduct in their schools that is consistent with the requirements of the various school activities. In addition, they contend, the public interest requires support of the public school's efforts to encourage high morals and strong character as part of the educational process. On the contrary, the plaintiffs note that the defendants are free to dismiss them from the NHS if this court ultimately determines that the defendants acted within their rights. Furthermore, the plaintiffs contend, it is always in the public interest to uphold the legal rights of others. The court holds the balance of equities favors the plaintiffs.

Therefore, the court being advised,

**IT IS ORDERED AND ADJUDGED as follows:**

1. That plaintiffs' motion for preliminary injunction (Doc. # 13) be, and it is, hereby **granted;**

2. That a preliminary injunction issue concurrently herewith enjoining the defendants to admit the plaintiffs to the Grant County High School Chapter of the National Honor Society, not later than **January 31, 1999.** No bond shall be required of the plaintiffs, since this is a civil rights action.