**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-20612

IN RE:

CHEVRON U.S.A., INC., GULF PRODUCTION COMPANY,
GULF PIPE LINE COMPANY, GULF REFINING COMPANY,
and GULF OIL CORPORATION,

Petitioners.

Petition for Writ of Mandamus
to the United States District Court for the
Southern District of Texas

August 19, 1997

Before POLITZ, Chief Judge, SMITH and BENAVIDES, Circuit Judges.

POLITZ, Chief Judge:

Chevron U.S.A., Inc., et al., bring this, their Third Petition for Writ of Mandamus, based upon the district judge's denial of their motion for his disqualification under 28 U.S.C. § 455.[1] For the reasons assigned, we conclude that the actions complained of meet the standards for recusal under § 455, but, as we explain, we exercise our discretion and decline to issue the requested writ.

Background

---

[1] District Judge Kenneth M. Hoyt, Southern District of Texas, presiding over proceedings entitled **Dorothy Adams, et al. v. Chevron U.S.A., Inc., et al.**, bearing number 96-CV-1462 on the docket of said court.

This petition for writ of mandamus arises out of an action filed by current and former residents of Kennedy Heights, a predominantly black subdivision in Houston, against several defendants, including Chevron and Log Development Company. Involved is a mass tort action in which plaintiffs claim damages for personal injuries, wrongful death, and property damage, with overtones or implications of alleged race discrimination. On July 24, 1997 Chevron invoked 28 U.S.C. § 455 and sought the trial judge's disqualification based upon several statements made by the judge which Chevron viewed as demonstrating the judge's personal bias or prejudice against it or which created the appearance thereof. The district judge denied the motion, referring the ruling for review by his chief district judge who declined to perform that review, correctly deeming same to be an appellate function. Chevron then filed the instant petition which we immediately set for oral argument, staying further evidentiary hearings in the case pending our ruling. The trial judge thereafter filed a supplemental order denying the recusal motion in which he stated that he found Chevron's submissions to be "frivolous, speculative, and lacking virtue," a finding with which we do not agree.

Analysis

We note at the outset that a petition for writ of mandamus is an appropriate legal vehicle for challenging the denial of a disqualification motion, but it is relief granted only in exceptional circumstances.[2] Although section 455 speaks in

---

[2] **In re City of Houston**, 745 F.2d 925 (5th Cir. 1984).

mandatory language,[3] in actual application we have recognized that the decision to recuse is committed to the sound discretion of the district court and typically is reviewed for an abuse thereof.[4] But, "[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal."[5]

The purpose of section 455(a), upon which Chevron principally relies, is apparent; it seeks to protect against even the appearance of impropriety in judicial proceedings[6] and we are charged with determining "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality."[7]

The Supreme Court has given substantial guidance in the proper application to be given to section 455(a), teaching that judicial rulings and comments standing alone rarely will suffice to disqualify a judge.[8] For example, it has instructed that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias

---

[3] Section 455(a) requires that any judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) provides that the judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party. . . ."

[4] **In re City of Houston**.

[5] **Nichols v. Alley**, 71 F.3d 347, 352 (10th Cir. 1995) (per curiam) (granting mandamus) (citing **United States v. Dandy**, 998 F.2d 1344, 1349 (6th Cir. 1993)).

[6] **United States v. Jordan**, 49 F.3d 152 (5th Cir. 1995).

[7] **Id.** at 155 (citing **Liljeberg v. Health Servs. Acquisition Corp.**, 486 U.S. 847 (1988)).

[8] **Liteky v. United States**, 510 U.S. 540 (1994).

or partiality challenge."[9] Such remarks will require disqualification, however, "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."[10]

Bringing to our attention several comments made on the record by the trial judge,[11] Chevron contends that he should be disqualified for expressing personal views about race, based on an extrajudicial source, reflecting a pronounced bias against Chevron. Alternatively, Chevron submits that even if the judge is not actually biased, the statements have created such an appearance of prejudice or bias that public confidence in the judiciary generally, and in the outcome of the instant litigation in particular, will be sorely impaired. We perforce agree with Chevron that the challenged statements and comments are unfortunate, grossly inappropriate, and deserving of close and careful scrutiny and most serious consideration.[12]

---

[9] **Id.** at 555.

[10] **Id.**

[11] It is undisputed that although the statements were on the record, none was made in the presence of the jury, and all were made in sidebar or conference discussions. Some comments were quoted, however, in the local press. Counsel's assurances and the record satisfy us that the trial court took quick and effective steps to learn if any juror had become aware of same and was adversely affected thereby. That consequence apparently has not happened to date. This does not end the inquiry, of course, as statements made outside the jury's hearing may still satisfy the standards of § 455(a).

[12] The objectionable statements include a comment by the court in its rejection of a writing indicating a greater incidence of lupus amongst black persons, which Chevron's counsel was planning to use in the cross-examination of plaintiffs' expert, that the writing was of little or no value "because white people wrote it." In lecturing counsel who said "black race" in his questioning, that there was "but

4

We are not persuaded from our review of the filings before us, specifically the relevant excerpting of the trial court's comments which counsel have quoted, together with the representations of counsel in oral argument, that counsel have carried their burden of demonstrating that the district judge has a personal bias or prejudice for or against any party in the subject litigation. From the comments and actions counsel have underscored in briefs and oral argument we are not persuaded that the judge has displayed a deep-seated favoritism toward the plaintiff, nor has he formed actual opinions based upon an extrajudicial source that disadvantage

---

one race . . . [only] genetic differences," the judge pronounced: "I don't care what the literature says" and proceeded to make a patently offensive comparison of ethnic differences:

> Why do you think Chinese people are short? Because there is so damn much wind over there they need to be short. Why are they so tall in Africa? Because they need to be tall. It's environmental. I mean, you don't jump up and get a banana off the tree if you're only 4 feet. If you're 7 foot tall and you standing in China, then you're going to get blown away when that Siberian wind comes through.

Those comments were followed by a reference to the ultimate wisdom of the Deity and these remarks:

> I think He knew that people in China didn't need to be tall and that people in Africa did. I think He knew that people in Africa needed to have this stuff in their skin because, if they didn't, they wouldn't have survived in the jungle. I think He knew that the people in Europe, Great Britain, didn't need it because, if they had that stuff in their skin, they would have died, but, because they don't have the pigmentation, they can live in Europe. Because I have the pigmentation, I can't live in Europe.

Further, in another conference the judge informed counsel: "I would not want to be an
employee of Chevron U.S.A. if Chevron loses this case, because I would feel, as a black person, that something bad could happen to me real fast." When counsel for Chevron indicated his distress at this comment the judge continued: "I am distressed that we live in a country [where] this kind of stuff happens."

5

Chevron. We reach a different conclusion, however, as relates to the charge of an appearance of partiality.

Chevron's alternative argument that a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality is persuasive. This standard applies if a judge's statements "reveal an opinion that derives from an extrajudicial source."[13] The quoted statements qualify as such.

While one may argue to the contrary, we must conclude that a reasonable person could believe that some of the judge's rulings might be impacted by beliefs or feelings, conscious or unconscious, underlying the quoted statements. Despite the assurances of counsel present when the statements were made that they were made either in jest or purposely were outrageous or sarcastic[14] and used by the judge to emphasize his point in explaining his position, and that no harm was intended, we must consider more. Regardless of intent, it is totally unacceptable for a federal judge SS irrespective of the judge's color SS to make racially insensitive statements or even casual comments of same during the course of judicial proceedings.[15] Such are not to be tolerated in any litigation and most

---

[13] **Liteky**, 510 U.S. at 555.

[14] While plaintiffs' counsel assert that the remarks were made in a joking or flippant manner, counsel for Chevron disagree. We find it unnecessary to resolve this dispute.

[15] Needless to say, a judge is not insulated from recusal, in a racially-charged case such as this, because he or she is black. In this regard, we note that in their initial response to the petition, plaintiffs' counsel contended that the thrust of the disqualification motion is that the trial judge should be disqualified in this case because he is black. Nothing in the record supports this imputation of motive to Chevron or its counsel. We quickly disposed of a similar charge in another case seeking recusal by mandamus:

decidedly are verboten in litigation in which racial or ethnic considerations are relevant to an issue before the court. When they occur, the risk of creating a public perception that the judge has a bias or prejudice which might affect the outcome crosses the proscribed threshold. This is especially true in a racially-charged case such as the instant one. Accordingly, here a reasonable person might indeed harbor doubts about the trial judge's impartiality and recusal would be appropriate under the terms of § 455(a).

Reaching that conclusion does not complete our consideration of the instant petition, for mandamus ordinarily is a discretionary remedy.[16] Relative to the specifics before us, we today hold that in a situation in which recusal is sought on the basis of perceived bias, we have the discretion to decline to grant the writ of mandamus. We opt to exercise that discretion.

Our examination of the course of the subject litigation reflects several facts critical to today's disposition. The jury was picked over 10 weeks ago and the trial began. There already have been 31 trial days during which 58 witnesses have testified. The trial was preceded by at least 9 pretrial conferences. It appears that the plaintiffs are very near the completion of their case in chief. To disqualify the

---

In their brief the attorneys for plaintiffs state that "[t]he implicit premise of petitioner's argument is that a judge who belongs to a racial minority group is inherently incapable of presiding fairly in a civil rights action involving other members of that group." We find no justification for that statement. The [petitioner] raises a question of substance and may well have served the court and all of the parties by seeing that it is resolved at this time.

**In re City of Houston**, 745 F.2d at 926 n.2.

[16] **United States v. Gregory**, 656 F.2d 1132 (5th Cir. Unit B Sept. 1981).

7

present judge this far into the proceedings would be unprecedented.[17]

This conclusion is bolstered by our view that the continuation of these proceedings in the district court would not be an exercise in futility. Chevron has not begun to present its side of the case. Once the trial proceeds to final judgment, if appropriate and called for another panel may review the record of the entire trial to determine whether any proscribed bias requires that the final judgment be vacated. That panel would have substantially greater information available to it.

Capsulating, we are not persuaded from our review of the filings in this court by counsel for the parties, the quoted excerpts from the trial record, and the representations of counsel in oral argument, that the district judge has been shown to have a personal bias or prejudice concerning a party. Thus, we at this time deny mandamus on the claim of personal bias or prejudice for want of a clear and strong showing on the merits. This ruling is not intended to trigger law of the case consequences that would bind a subsequent panel of this court.[18] We conclude, however, that a reasonable perception of bias or prejudice exists but, for the reasons assigned, we decline to issue the requested writ.

We entrust to the district judge's discretion the proper course of action in

_____

[17] Our opinion should not be interpreted to say that recusal is never appropriate in mid-trial; the status of a case is merely a factor we use in making our discretionary decision.

[18] See 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 798 (1981) ("Rulings that simply deny extraordinary relief for want of a clear and strong showing on the merits, or that are avowedly preliminary or tentative, do not trigger law of the case consequences.") and cases cited therein.

8

light of today's disposition and our reasons therefor.  Because of the identified discretionary basis for our ruling, the denial of the writ necessarily is without prejudice to petitioners.

In light of today's ruling the pending motion for an instanter ruling or, alternatively, for a lifting of our stay of trial proceedings is mooted and is dismissed as such.

The petition for writ of mandamus is DENIED.