**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

NO. 97-20242

MONICA M. GARCIA,

Plaintiff-Appellant

VERSUS

WOMAN'S HOSPITAL OF TEXAS,

Defendant-Appellee

Appeal from the United States District Court
For the Southern District of Texas

June 22, 1998

Before KING, BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:

**I.**

**FACTS & PROCEDURAL HISTORY**

The district court entered judgment as a matter of law under Fed. R. Civ. P. 50 (a) against appellant for the second time and she again appeals that decision. This Court's first opinion in this case sets out the relevant factual basis for Garcia's claims in sufficient detail, and we need not cover that ground again here. *See Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 811-12 (5th Cir. 1996). In short, Garcia became pregnant while working as an LVN in the Family Care Center Unit (maternity ward) at Woman's Hospital of Texas ("the hospital") and, due to pregnancy related health

1

problems, was forced to convalesce at home for just over a month from January 28 to March 1, 1993. Thereafter her obstetrician, Dr. Debra Gunn, who also worked at the hospital, released her to return to work, believing that Garcia was fit to perform the duties of an LVN in the maternity ward at the hospital, as Dr. Gunn understood those duties. The hospital administration, consistent with hospital policy, required Dr. Gunn to certify on a prepared form that Garcia could perform a variety of ostensibly required tasks. Dr. Gunn certified that Garcia could perform all of the listed tasks with the exception of pushing, pulling or supporting 150 pounds. Consistent with hospital policy, Garcia was not allowed to return to work with the above limitation, and after she was on leave for more than six months the hospital terminated her, again consistent with hospital policy.

Garcia sued the hospital for violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978. 42 U.S.C. § 2000e(k). The district court denied the hospital's motion for summary judgment and the case went to trial. At the close of plaintiff's case, the district court granted the hospital's Rule 50 motion on the grounds that the hospital's policies were applied to all employees equally, whether pregnant or not, and therefore, Garcia could not make out a case of disparate treatment. Before the district court granted the Rule 50 motion, Garcia sought permission to reopen her case to call Dr. Gunn to testify that no pregnant woman could push, pull or support 150 pounds, thereby demonstrating that the policy had a disparate

impact on pregnant women. The motion to reopen was denied and the Rule 50 motion was granted.

Garcia appealed and this Court reversed and remanded. This Court ordered the district court to allow Dr. Gunn to testify and to reconsider the Rule 50 motion in light of that testimony. On remand, Garcia asked the district judge to recuse himself, which he declined to do. Thereafter, Garcia called Dr. Gunn, and her testimony was taken by the Court, without a jury. The district court then reviewed all the evidence in the case, including Dr. Gunn's testimony, and again granted the hospital's Rule 50 motion, whereupon Garcia filed the instant appeal. Garcia's appeal essentially raises the following issues:

1. **Whether the district judge should have recused himself;**

2. **Whether the district court erred by taking Dr. Gunn's testimony without a jury, rather than retrying the entire case to a jury, and then reconsidering any Rule 50 motion urged by the hospital at the close of Garcia's case;**

3. **Whether the district court erred by granting the hospital's Rule 50 motion for judgment as a matter of law for the second time.**

## II.

### LAW & ANALYSIS

#### A.

#### STANDARDS OF REVIEW

The district judge's decision not to recuse himself is reviewed for abuse of discretion. *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997), *citing In re City of Houston*, 745 F.2d 925 (5th Cir. 1984). The procedural question of how to handle the taking of Dr. Gunn's testimony on remand is committed to the

3

sound discretion of the district court, and like all matters of docket management and trial procedure, it is reviewed for an abuse of that discretion. *Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). Finally, the district court decision to grant the hospital's motion for judgment as a matter of law is again reviewed *de novo*. *Garcia I*, 97 F.3d at 812, *citing Resolution Trust Corp. v. Cramer*, 6 F.3d 1102, 1109 (5th Cir. 1993).

**B.**

**Recusal**

Title 28 U.S.C. § 455 governs recusal of federal district judges. "Section 455(a) requires that a judge 'shall recuse himself in any proceeding in which his *impartiality* might reasonably be questioned.' Section 455(b)(1) provides that the judge 'shall also disqualify himself ... [w]here he has a *personal bias or prejudice* concerning a party....'" *In re Chevron*, 121 F.3d at 165 n. 3 (emphasis added). The tenor of § 455's language is mandatory, but this Court has recognized that disqualification under this section "is committed to the sound discretion of the district court." *Id.*

The district judge did not abuse his discretion by refusing to recuse himself. His comments on remand regarding the plaintiff's case reflected no personal animus against Garcia or in favor of the hospital. His comments regarding Garcia's ability to prove her case were perhaps unflattering, but reflected only the district judge's considered opinion upon having viewed the evidence and law in this case. It was no violation of judicial impartiality for the

4

district judge to form an opinion regarding the merits of the plaintiff's case, otherwise he could not have decided the motion for judgment as a matter of law, as the decision of that motion required the district judge to formulate an opinion about the sufficiency of the plaintiff's case under the applicable law. The district judge's comments did not indicate that he would ignore the probative value, if any, of Dr. Gunn's testimony when reevaluating the hospital's Rule 50 motion. Ultimately, nothing about the district court's ruling evinced any personal bias, prejudice or impartiality, therefore, we find no abuse of discretion in the district judge's refusal to disqualify himself in this case.

## C.

### Dr. Gunn's Proffer

There was considerable confusion below concerning whether this Court's previous opinion required the district court to give Garcia a new trial, wherein she would have the opportunity to call Dr. Gunn to testify, followed by an appropriate ruling on any Rule 50 motion reurged by the hospital. This Court's opinion carefully identifies the sort of testimony Dr. Gunn might have given, which would have affected the propriety of the hospital's Rule 50 motion. *Garcia I*, 97 F.3d at 814. The district court determined that it would be more efficient to take Dr. Gunn's testimony by proffer before selecting a jury, and determine based thereon whether to allow Garcia a new trial. We are unwilling to say that such approach was an abuse of discretion. It would have been a waste of resources for the district court to grant a new trial, if Dr.

Gunn's testimony was not helpful to Garcia's case. If Dr. Gunn's testimony failed to establish disparate treatment (i.e., discriminatory application of the hospital's policies to pregnant women), then the jury would have to be dismissed, because the disparate impact claim standing alone cannot be tried to a jury.[1] Furthermore, if Dr. Gunn's testimony failed to establish that the hospital's policies had a disparate impact on pregnant women, then judgment as a matter of law would be appropriate. Therefore, one can easily see the wisdom in taking Dr. Gunn's testimony and assessing its probative value prior to incurring the expense of a new trial, and we find no abuse of discretion by the district court in doing so.

## D.

### Merits of Rule 50 Motion

The district court was correct on the law and facts in this case that, as a matter of law, Garcia's evidence was insufficient to make out a *prima facie* disparate impact or disparate treatment claim under the Civil Rights Act of 1964, as amended by the

---

[1]Prior to the Civil Rights Act of 1991, Title VII claims could not be tried to a jury, and compensatory and punitive damages could not be awarded. The Civil Rights Act of 1991 amended Title VII to allow compensatory and punitive damages in cases of intentional discrimination (i.e., not in cases involving disparate impact only), and jury trials were permitted only in cases where compensatory and punitive damages were proper, in other words, in disparate treatment cases. See Rev.Stat. §§ 1977A(a) & (c), 42 U.S.C. §§ 1981a(a) & (c), as added by § 102 of the 1991 Act. Therefore, a jury may not determine the disparate impact claim, and, if that is the only claim left, there is no need for a jury.

Pregnancy Discrimination Act of 1978.[2]  To make out a *prima facie* violation of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, Garcia had to show: 1) that the hospital's policies or their application intentionally treated her differently than non-pregnant employees because of her pregnancy (i.e., disparate treatment); or 2) that the hospital's policies had a disproportionately negative impact on pregnant employees like herself as compared to non-pregnant employees (i.e., disparate impact). *Garcia I*, 97 F.3d at 813, *citing Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971).

*i.*

*Disparate Treatment*

Intentional disparate treatment may be achieved *via* a policy which on its face classifies pregnant employees differently from other non-pregnant employees.  *See, e.g., International Union, UAW v. Johnson Controls*, 499 U.S. 187, 197-98, 111 S. Ct. 1196, 1202-1203, 113 L. Ed. 2d 158 (1991).  On the other hand, a facially neutral policy may also be used to intentionally discriminate against employees because of their pregnancy if selectively applied to them.[3]  Garcia failed to make out a *prima facie* case for facial or pretextual disparate treatment, because she could not show that

---

[2]There was a debate in the district court on remand as to whether the district court was to reconsider both Garcia's disparate impact and disparate treatment claims in light of Dr. Gunn's testimony or just the disparate impact claim.  Our resolution of the merits of the district court's decision renders the question moot.

[3]This is what the Court referred to as pretextual disparate treatment in *Garcia I, supra* at 813 n. 2.

she was treated differently than anyone else. The policies on their face do not classify pregnant employees differently from all other employees. Furthermore, the testimony proved that the policies, were applied equally to all employees. Dr. Gunn's testimony in fact reinforced the testimony of Ms. Judith Ann Squyres, R.N., the hospital's Employee Health Risk Management Coordinator in the relevant time period. Ms. Squyres testified that no employees on sick leave were allowed to return to work, unless their doctor certified on a prepared form that they could perform various listed tasks, which ostensibly were requirements of their jobs. The state of this evidence will not support a finding that Garcia was intentionally treated differently from other non-pregnant employees, and judgment as a matter of law was appropriate on her disparate treatment claim.

## ii.

### Disparate Impact

The principal reason for remand in this case was so that Dr. Gunn's testimony might be taken and so that the district court might reevaluate the propriety of judgment as a matter of law in light of her testimony. *Garcia I,* 97 F.3d at 814. We pointed out that, if Dr. Gunn testified that no pregnant woman could meet the requirement of pushing, pulling or supporting 150 pounds, then Garcia could make out a *prima facie* case of disparate impact. This is true because the 150-pound-restriction could be expected to keep all pregnant women who take sick leave like Garcia from being able to return to work when their illness abates.

8

Dr. Gunn did not testify that no pregnant women could lift 150 pounds. Rather, she testified that she could not accept the potential legal liability associated with saying that any woman could lift 150 pounds, whether pregnant or not. That is not an expert opinion about the likely effect of the 150-pound-restriction on all pregnant women. The substance of Dr. Gunn's testimony is legally insufficient to establish a *prima facie* case of disparate impact; therefore, judgment as a matter of law was appropriate.

### III.

### CONCLUSION

The district judge did not abuse his discretion by refusing to recuse himself as there was no personal bias or prejudice against the plaintiff and none of his comments reflect any impartiality, i.e., inability to decide the merits of the case based on the controlling law as applied to the evidence. The district court did not abuse its discretion by taking Dr. Gunn's testimony by proffer without a jury, as that was the only sensible course under the circumstances. Finally, the district court correctly entered judgment as a matter of law on Garcia's disparate treatment claim for lack of evidence of unequal application of the facially neutral policies, and the district court correctly entered judgment as a matter of law on Garcia's disparate impact claim for lack of evidence that the policies could result in a disproportionately negative effect on pregnant women. Therefore, we affirm.

AFFIRMED.