IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2009

Charles R. Fulbruge III
Clerk

No. 09-20128
Summary Calendar

PAT RABORN,

Plaintiff - Appellant

v.

INPATIENT MANAGEMENT PARTNERS INC,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-3950

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Pat Raborn appeals from the district court's grant of summary judgment to Defendant-Appellee Inpatient Partners, Inc. We AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Pat Raborn was hired as a receptionist at Inpatient Management Partners, Inc. ("Inpatient") in 1996. After she was hired, she was promoted

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

twice and became Inpatient's Network Operations Manager. In her role as a manager, Raborn supervised several workers at Inpatient, including Sophie Martinez and Sandra Williams. In February 2003, Martinez and Williams sued Inpatient for race discrimination. The Equal Employment Opportunity Commission ("EEOC") investigated their charges by interviewing thirteen of Inpatient's employees. Raborn was one of the thirteen employees interviewed, and she submitted an affidavit supporting Martinez and Williams's claims of discrimination at that time.

In April 2003, Raborn's supervisor, informed Raborn that her management position at Inpatient was being eliminated. Despite the elimination of her position, the company found another position for her, and Raborn remained employed at Inpatient after April 2003. She was then promoted twice, ultimately to the position of Director of Credentialing.

In 2004, Inpatient hired consultants to review their business. The consultants found that Inpatient was overstaffed and financially strained. To alleviate Inpatient's problems, the consultants, Amy Kaszak and Dr. Norm Jacobson, together with the Chief Operating Officer, Les Williams, recommended that Inpatient outsource a variety of in-house positions, including those in the credentialing and billing departments. Inpatient accepted the consultants' recommendation and entered into an outsourcing agreement with Houston Medical Records (the "Agreement"). The Agreement was signed on October 1, 2004. Houston Medical Records took over Inpatient's credentialing and billing duties in December 2004. Raborn and a number of other employees were then discharged on December 2, 2004.[1] On December 2, Raborn was called into a meeting with Dr. Phil Sanger, one of Inpatient's owners, where he personally

---

[1] After problems with Houston Medical Records, the credentialing function was returned in-house in August of 2005.

informed her that she was being terminated as a result of her position being outsourced.

During this same time frame, Sandra Williams's discrimination claim was still proceeding against Inpatient. She filed a lawsuit against Inpatient in March 2004. Inpatient sent a set of interrogatories to Ms. Williams in August 2004. In November 2004, Ms. Williams responded to Inpatient's interrogatories, and, in one of her answers, she identified Raborn as a person with knowledge of relevant facts. Anthony Tran, the Director of Human Resources for Inpatient, was the individual who received the response.

In December 2006, Raborn filed a lawsuit against Inpatient under Title VII, claiming that Inpatient unlawfully retaliated against her for participating in a protected employment activity. Raborn's lawsuit alleges that she was fired in retaliation for her designation as a potential witness for Sandra Williams. Inpatient denied Raborn's claims, asserting that they discharged her for a legitimate, non-retaliatory reason, namely outsourcing. Alternatively, Inpatient claimed that Raborn failed to establish a prima facie case of retaliation, because she could not demonstrate that her designation as a witness in Sandra Williams's interrogatory response caused her termination. Inpatient moved for summary judgment on both grounds, and the district court granted Inpatient's motion. This appeal followed.

## II. DISCUSSION

Raborn addresses three rulings of the district court in her appeal: (1) its denial of her motion to recuse; (2) its denial of her Rule 56(f) motion for additional discovery; and (3) its grant of summary judgment.

### 1. Recusal

Raborn argues that Judge Hughes, instead of granting Inpatient's motion for summary judgment, should have recused himself under 28 U.S.C. § 455(a). Judge Hughes denied Raborn's motion to recuse, and we review a judge's denial

of a motion to recuse for abuse of discretion. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 483 (5th Cir. 2003).

Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." When considering a claim under § 455(a), we must consider whether a reasonable and objective person, rather than the hypersensitive, cynical, and suspicious person, knowing all of the facts, would harbor doubts concerning the judge's impartiality. *Sensley v. Albritton*, 385 F.3d 591, 599 (5th Cir. 2004); *Patterson,* 335 F.3d at 484. Moreover, "'an appellate court, in passing on questions of disqualification . . . should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel.'" *Trevino v. Johnson*, 168 F.3d 173, 179 (5th Cir. 1999) (quoting *Davis v. Bd. of Sch. Comm'rs*, 517 F.2d 1044, 1052 (5th Cir. 1975)). A "showing of potential bias by a judge against a party's attorney does not generally suffice to require a judge to disqualify himself or herself under § 455(a)." *Trevino*, 168 F.3d at 179. Bias against a party's attorney will only require disqualification when "'it can also be shown that such [attorney-bias] would demonstrate a bias for or against the party itself.'" *Trevino*, 168 F.3d at 179 (quoting *Henderson v. Dep't of Pub. Safety & Corrs.*, 901 F.2d 1288, 1296 (5th Cir. 1990)).

Raborn's argument for recusal focuses on Judge Hughes's alleged bias against her attorney, Larry Watts, which she claims resulted in bias against herself. Raborn bases her concerns on certain comments by the judge and his ruling on her discovery motions.

The question of whether Judge Hughes's comments regarding Raborn's case require recusal is governed by the Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540, 555 (1994). In *Liteky*, the Supreme Court stated that "opinions formed by the judge on the basis of facts introduced or events

4

occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." 510 U.S. at 555. Moreover, this court has held that a judge does not show bias merely because he has formed and expressed an opinion, in light of the evidence before him, regarding a plaintiff's ability to prove her case. *See Garcia v. Woman's Hosp. of Texas*, 143 F.3d 227, 230 (5th Cir. 1998).

Both of Judge Hughes's comments which Raborn points to as evidence of bias were based on facts introduced and events that occurred during the current proceedings. Judge Hughes's expressed belief that this court's prior remand was incorrect was based on Watts's failure to obey two court orders and his failure to "show up" for a hearing. His opinion about the difficulty of proving her case was based on a review of the file. His expression of these opinions, while perhaps better left unsaid, does not mandate his recusal. *See Garcia*, 143 F.3d at 230. The judge's comments do not show any deep-seated antagonism toward Raborn or her case that would require recusal.

Although the judge did grant Raborn three discovery orders, the judge did not grant Raborn all the discovery she sought, and because of this fact, Raborn asserts that the judge's discovery orders show that he was biased against her. An adverse ruling, by itself, is not evidence of bias. *Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). From the perspective of a reasonable and objective person, Judge Hughes's actions in no way reveal that his animosity towards Watts, if any, resulted in any bias towards Raborn. Because the evidence does not show that Judge Hughes had any bias against Raborn herself, the judge did not abuse his discretion in denying her motion for recusal under § 455(a).

*2. Rule 56(f) Motion for Continuance*

Raborn argues that the district court's decision should be reversed because she was entitled to further discovery before the court could grant Inpatient's motion for summary judgment. Raborn made this argument to the district court, and the district court rejected Raborn's contention and precluded any additional discovery. "We review the district court's decision to preclude further discovery prior to granting summary judgment for abuse of discretion." *Krim v. Banctexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993).

If a party needs more discovery to defeat a motion for summary judgment, they must seek a continuance by bringing a motion under Federal Rule of Civil Procedure 56(f). *Potter v. Delta Airlines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996). "Rule 56(f) allows for further discovery to safeguard non-moving parties from summary judgment that they cannot adequately oppose" due to inadequate discovery. *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). Before the district court granted Inpatient's motion for summary judgment, Raborn moved for a continuance under Rule 56(f), asserting that a continuance was necessary because she needed to depose Kasczak, Miers (her supervisor), and Tran, in order to adequately oppose Inpatient's motion.[2] Although on appeal Raborn asserts other reasons for a continuance, we can only consider the reasons she specifically presented to the district court in her Rule 56(f) motion.[3] *See Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 167 (5th Cir. 1991) ("Because a party must present certain specific facts in order to obtain a Rule 56(f)

---

[2] The motion at issue was Raborn's second Rule 56(f) motion.

[3] Raborn's motion did not include the following reasons that she now raises on appeal: (1) her inability to discover financial information regarding Inpatient's financial distress; (2) her inability to discover evidence that Houston Medical Records took on Inpatient's credentialing free of charge; (3) her need to depose Leslie Barker; and (4) her need to depose Inpatient's COO.

continuance, we will not consider on appeal reasons for such a continuance that a party failed to present to the district court.").

In a Rule 56(f) motion, a party must show "(1) why additional discovery is needed and (2) how the additional discovery will likely create a genuine issue of material fact." *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n.5 (5th Cir. 2002). Raborn asserted in her motion that the additional depositions of Kasczak, Miers, and Tran would allow her to present evidence that would create a genuine dispute (1) as to whether her designation as a witness played a role in her discharge and (2) as to whether her position at the company was actually outsourced. The district court rejected Raborn's assertion, stating at oral argument that further discovery would not produce evidence that would create a genuine dispute of material fact.

The evidence in the record does not show that the district court abused its discretion in concluding that the additional depositions of Tran, Miers, and Kaszak would not allow Raborn to produce sufficient evidence to create a genuine dispute of material fact as to the reason for her termination or as to whether her position was ever outsourced. *See Krim*, 989 F.2d at 1442.[4] Accordingly, we decline to reverse on this ground.

*3. Inpatient's Summary Judgment*

Since we have determined that the district court did not abuse its discretion in denying Raborn's Rule 56(f) motion or her motion to recuse, we can now determine whether summary judgment was proper based on the evidence before the district court. We review a grant of summary judgment de novo. *N.*

---

[4] We also note that Raborn makes much of the fact that she had only a limited time for discovery after the case was remanded to the district court following the first appeal. However, the case was pending for ten months in the district court before it was dismissed for want of prosecution. Raborn does not address why she did not take advantage of that time period to obtain discovery.

*Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 555 (5th Cir. 2008).

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a grant of summary judgment, we view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). We may "affirm a grant of summary judgment on any grounds supported by the record and presented to the court below." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

The district court granted Inpatient summary judgment on two grounds. First, it held that Raborn failed to establish a prima facie case of retaliation. Alternatively, the court held that Raborn failed to present sufficient evidence to create a genuine dispute over whether Inpatient's articulated reason for her termination was pretextual. We need not decide whether Raborn established a prima facie case, because we agree with the district court that Raborn failed to create a genuine dispute over Inpatient's articulated reason for her termination.

Under the *McDonnell-Douglas* burden-shifting framework that governs Raborn's claim,[5] Raborn had the burden of producing sufficient evidence to

---

[5] Raborn's brief raises for the first time on appeal a "mixed-motive" theory for her termination. We will not consider theories raised for the first time on appeal. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999).

create a genuine dispute over Inpatient's stated reason for her termination. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). To create a genuine dispute, Raborn had to present evidence showing that Inpatient's reason was false and that her designation as a witness in the interrogatory response[6] was the real reason for her discharge. *See Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998) ("An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason."). Raborn, however, failed to present such evidence.

The summary judgment record does not show that Inpatient's reason was false; in fact, the record shows that Raborn's credentialing duties were in fact outsourced. Inpatient and Houston Medical Records signed an agreement to outsource Raborn's position, as well as a number of other positions, on October 1, 2004. Although the agreement was signed on October 1, 2004, the actual outsourcing occurred in December 2004, and, on December 2, 2004, Raborn and a number of other employees were told that their positions had been outsourced and that they were discharged.

The record also does not show that Raborn's designation as a witness played any role in her discharge. The evidence shows that the decision to eliminate Raborn's position was made on October 1, 2004, at least one month before the interrogatory response was produced to Inpatient. Furthermore, Tran stated in his affidavit that he was the one at Inpatient who received the

---

[6] The "interrogatory response as a basis for retaliation" argument is somewhat puzzling. The interrogatory response simply lists Raborn, along with a dozen other people, as a "person with knowledge of relevant facts." It does not, as Raborn implies, suggest that Raborn is "supporting" the plaintiff in that case. Nor does Raborn explain the reason that – if listing was enough to show alignment against the company – the other "persons with knowledge of relevant facts" were not also discharged.

interrogatory response and that he did not show the response to any of the decisionmakers involved with Raborn's discharge. Raborn states that her entire claim stems from Inpatient's knowledge of her designation as a witness in the interrogatory response, but there is no evidence that the response played any role in her termination.[7]

The only evidence that Raborn raises to show that Inpatient's reason was pretextual is the close temporal proximity between the interrogatory response and her discharge, her continued employment after the Agreement was signed, and an alleged conversation she had with receptionist Leslie Barker.[8] While the temporal proximity between a protected action and an adverse employment decision may be sufficient to prove a prima facie case of retaliation, temporal proximity alone is insufficient to rebut an employer's legitimate, non-retaliatory reason. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004) (*"Without more than timing allegations, and based on Alltel's legitimate, nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper."*). However, even considering the temporal proximity with her continued employment and her alleged conversation with Barker, a reasonable jury could not find in Raborn's favor on the issue of pretext, because the evidence indisputably shows that her position had, in fact, been outsourced.

---

[7] The summary judgment record shows that four individuals were involved with Raborn's termination: Kaszak, Jacobson, and Williams, who recommended the outsourcing of her position, and Dr. Sanger, who actually discharged her. There is no evidence that any of these people knew about or took into account the interrogatory response in their decision to eliminate Raborn's position and discharge her from the company. Raborn asserts in her reply brief that another doctor, Dr. Cunningham, was also involved in her termination. Raborn, however, did not depose Dr. Cunningham or even seek to depose him in her Rule 56(f) motion, so there is no evidence regarding his motivation, if any, behind Raborn's discharge.

[8] Barker allegedly told Raborn that Raborn's position was not being outsourced. However, the record does not show any basis for Barker to have such knowledge. The undisputed evidence shows that the entire department where Raborn worked was outsourced.

Based on the summary judgment evidence before the district court, no reasonable jury could find that the "real" reason behind Raborn's discharge was the interrogatory response or that Inpatient's proffered reason was pretextual. Therefore, the district court properly granted Inpatient summary judgment.

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.