Mrs. Thomas J. **BALLENGER** et al.,
Plaintiffs-Appellees,

v.

**MOBIL OIL CORPORATION,**
Defendant-Appellant.

No. 72–2715.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1974.

Rehearing Denied Feb. 22, 1974.

---

John G. Tucker, Beaumont, Tex., Maurice E. Amidei, Dallas, Tex., for defendant-appellant.

Gilbert T. Adams, Ernest J. Browne, Jr., Beaumont, Tex., for plaintiffs-appellees.

Before COLEMAN and SIMPSON, Circuit Judges, and ESTES, District Judge.

SIMPSON, Circuit Judge:

Mobil Oil Corporation appeals from an adverse jury verdict in a diversity suit brought against it by the survivors of Thomas J. Ballenger. The deceased was at all relevant times an employee of Mobil and died from burns sustained after an explosion and fire in Mobil facilities located in Beaumont, Texas, on April 23, 1970. Mrs. Ballenger and the two surviving minor children brought suit under Art. 8306, Sec. 5, Vernon's Ann.Civ. St., alleging gross negligence on the part of Mobil. The Texas statute permits recovery of punitive damages from an employer for work related injuries despite compensation under the applicable Workman's Compensation law; but only if the plaintiff can prove *gross* negligence as defined by the statute and, further, that some *actual* damages were sustained (although the actual damages so proved can not be recovered if a Workman's Compensation award has been made).

The trial court denied Mobil's motion for directed verdict at the close of all the evidence and submitted the case to the jury upon special interrogatories. The jury found that Mrs. Ballenger sustained $125,000.00 and each child $75,000.00 in actual damages. The jury also found Mobil to have been grossly negligent and determined punitive damages in the amount of $100,000.00 for each plaintiff. The jury found that Mobil was grossly negligent in furnishing defective machinery, instruments and an unsafe place to work, and an inadequate inspection of the same, each of which acts of gross negligence was found to be a proximate cause of Ballenger's inju-

ries and death. Judgment was entered below for the punitive damages awarded after denial of Mobil's motion for Judgment n. o. v. This appeal timely followed. We hold that the trial court erroneously submitted the case to the jury and reverse and render.

### FACTS

The decedent worked in the "Alkalation Two Unit", which is owned and operated by Mobil, and adjoins the "Five Gas Plant East Unit", another Mobil installation. Five Gas Plant East is approximately one half block square in area and shares a common control room with the Alkalation Two Unit where Ballenger worked. Customary procedure at the time of his death was for one man to remain in the control room at all times and another to be on the grounds of the Gas Plant. The explosion and fire occurred in furnaces located in the Alkalation Two Unit caused by equipment problems in the adjoining gas plant.

On the day in question a Mobil employee, Carl Reese, was engaged in routine work at the gas plant involving a "water wash drum". This is a cylindrical drum about 10 feet high and 30 feet long. Its function is essentially to cleanse the butane Mobil produces to render it sufficiently pure to be sold for commercial use. The process employed is one of pumping both butane and water into the drum under pressure. The water separates from the butane inside the drum and drops to the bottom. From there the water is fed into a sewer and removed from the grounds. The butane occupies the space above the water and is pumped out of the drum for storage elsewhere. In order to keep roughly the proper 50–50 mix of butane and water, a regulator valve automatically opens and closes the opening through which the water passes into the sewer. When the water level rises too high, the regulator opens to permit more water to flow into the sewer. Too low a water level automatically activates an opposite result.

Between the water and butane in the wash drum a layer periodically developed consisting of impurities left over from the cleansing process. This waste residue drained into the sewer beneath the drum but only after the water had been entirely removed. Because the automatic action of the regulator valve kept the drum half filled with water, it was necessary to perform a manual operation to remove the residue above the water level. Two methods were available to workmen responsible for this task. Some chose to manipulate the "controller," an external float device which caused the regulator valve to open or close according to its measurement of the water level in the drum. By manually pushing the controller to a point indicating excessive water, one could cause the valve to open and thereby drain the water, and then the residue, into the sewer. The alternate method was to use a hand valve located underneath the vessel to draw off the water and residue through a bypass line. On April 23, 1970, Carl Reese was performing the above described task, using the hand valve to bypass the normal route and drain off water and residue. After completing the job leaving only butane in the drum, Reese manually closed this valve by turning it as far as he could to the closed position. Butane nevertheless began escaping from the drainage pipe and running into the sewer. The evidence indicated but did not establish conclusively that the automatic regulator control valve had stuck in a wide open position after Reese closed the manual bypass. Reese thereupon called out to the employee in the control room and to Ballenger in the adjacent alkalation unit for help in stopping the flow from butane. Ballenger's death was directly caused by an explosion and fire in the escaping butane gas in the sewers near the alkalation unit furnaces. Ballenger was burned over 87 percent of his body and died eight days later.

Mobil presents nine assignments of error on appeal. We summarize the issues raised: (1) was the finding of

gross negligence, requisite to establishment of Mobil's liability, error as a matter of law? (2) was there proof of gross negligence by a vice principal, officer or supervisory employee of Mobil for whose acts Mobil could be held responsible? (3) was it error for the trial court to allow plaintiff's counsel to inform the jury that the actual damages it might determine could not be awarded because plaintiffs had already received benefits under the state Workman's Compensation law? (4) was it error to allow plaintiffs' counsel to argue to the jury with respect to the deceased's actual pain and suffering? (5) did the trial court erroneously overrule Mobil's objection to hearsay evidence regarding rumors of employee dissatisfaction with the past performance of the regulator valve on the water wash drum in question? Our view of the first question raised, the failure of the evidence to establish gross negligence as a matter of law is dispositive of this appeal. We therefore pretermit discussion of the other points raised.

## GROSS NEGLIGENCE AND PUNITIVE DAMAGES

Extensive testimony and argument at trial were devoted to the question of whether Mobil was grossly negligent in its use and inspection of the water wash drum and, more specifically, the regulator valve thought to be the cause of the accident. There was, of course, no dispute as to the degree of negligence required to be proved in order for plaintiffs to prevail. That formula has been enunciated in a long line of Texas cases construing the applicable Texas Statute, Art. 8306, Sec. 5, V.A.C.S. It is as follows:

"Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise a presumption of a conscious indifference to consequences. Such indifference is morally criminal and if it leads to actual injury may well be regarded as criminal in law."

Sheffield Division, Armco Steel Corp. v. Jones, Tex.1964, 376 S.W.2d 825, 828, quoting Southern Cotton Press & Mfr. Co. v. Bradley, 1880, 52 Tex. 587. (emphasis supplied)

Decisions with respect to gross negligence have focused largely on two aspects of this standard. The first is whether the plaintiff has demonstrated the requisite state of mind on the part of the defendant, a "conscious indifference" to the rights and safety of others. See, e. g., Helms v. Universal Atlas Cement Co., 5 Cir. 1953, 202 F.2d 421; Missouri Pacific Ry. Co. v. Shuford, 1888, 72 Tex. 165, 10 S.W. 408; Texas Pacific Coal and Oil Co. v. Robertson, 1935, 125 Tex. 4, 79 S.W.2d 830. The other line of inquiry deals with whether the plaintiff can show a complete lack of any care by the defendant, which if shown raises a presumption of conscious indifference even without evidence as to mental state. A distinction between ordinary care on the one hand and slight care on the other has long been recognized by the Texas courts. The exercise of even slight care defeats the presumption.

"* * * There can be no partial exercise of 'ordinary care.' It exists, as a degree, in completeness, or it is totally wanting in any given case. While in a given case, 'ordinary care' may not exist, yet there may exist at least slight care."

Sheffield Division, Armco Steel Corp., supra, 376 S.W.2d at 829, quoting Missouri Pacific Ry. Co. v. Shuford, supra, 10 S.W. at 410–411.

The two concepts are mutually exclusive, however, and this is crucial to the outcome of this case. While a complete lack of care raises a presumption of conscious indifference, a showing of any care whatever conclusively establishes the contrary—that there could not have been a conscious indifference to the rights and welfare of others as required under the statute. Bennett v. Howard, 1943, 141 Tex. 101, 170 S.W.2d 709. The appellees' evidence at trial dealt ex-

tensively with the issue of negligence. Their counsel argues strenuously on brief and in oral argument that Mobil's claim of at least some care in the maintenance and inspection of its regulator valves is illusory. Our review of the evidence in the light of the relevant authorities leads us to a contrary view.

Appellees' trial strategy necessarily was to direct as much evidence and data as possible to the issue of Mobil's negligence in order to persuade the jury to find the existence of gross negligence. In defense Mobil sought both to rebut plaintiffs' evidence of specific instances of negligence and further to show that it had exercised some care, however slight, in order to preclude a finding of gross negligence. While the evidence as to Mobil's negligence was thus not wholly without contest, it nonetheless sufficed in the judgment of the trial judge to warrant submission to the jury.

Much of the trial evidence dealt with Mobil's processing of "work orders." These were standardized forms with perforated carbon copies used for transmitting requests for equipment, repair or general servicing from Mobil employees to management. Plaintiffs-Appellees sought to show that Mobil had been notified of a defect in the regulator valve involved in the accident, yet chose to ignore it to maximize productivity. One plaintiffs' witness, A. T. Pate, testified to seeing two work orders while working at Mobil requesting repair of this regulator valve. One of these, prepared by Mobil employee Harvey Harrell, received in evidence read, "Please repair dump regulator under No. 17 water wash drum. This regulator sticks." The record is not conclusive whether any repair was done, but the cumulative effect of the evidence indicates no repair was in fact made in compliance with Harrell's work order. J. L. Martel, another employee, testified that he also had seen two work orders asking repair of this regulator and did not believe that the work had been done. George W. Wharton was unit process foreman at the time of the accident and was authorized to approve or disapprove work orders. He testified that he approved 99 out of every 100 work order requests that reached him, though he could not recall any specific order as to this water wash drum. Some hearsay evidence was received showing that Mobil employees complained often (though apparently only to each other) about the sticking of this regulator valve. While this testimony appears to have persuaded the jury on the question of whether the work orders were honored, there is no indication that Mobil was aware of the employee dissatisfaction.

Harvey Harrell testified further that about thee months prior to the accident the regulator in No. 17 water wash drum had stuck in a partially open position while he was draining off some residue. He blocked off the flow of butane by use of an alternate valve and called an "instrument" (repair) man. The valve was put back in service by the instrument man and Harrell filled out the work order already alluded to after the valve was again operative.

Employee J. L. Martel testified for the plaintiffs in connection with the management and union safety committees, of which he was a member at the time of the accident. This group made periodic safety inspections and each area of the plant was inspected at least every three months. One of the committee's functions was to check the disposition of work orders and forward recommendations to Mobil with respect to unsafe equipment. Martel said that the valve in question had been the subject of work orders and the failure of Mobil to repair it had been communicated to the company in the union report at least three times during the year prior to the accident. These reports are the subject of a monthly meeting between the union safety committee and Mobil's safety representatives.

Mobil in defense introduced copies of monthly union safety reports covering February, 1969, through January, 1970, and one dated April 20, 1970, only three days prior to Ballenger's fatal accident.

Occasional reference is made to Gas Plant # 5 in the 1969 reports, but no mention is made of the water wash drum or regulator valve. The January and April of 1970 reports list Gas Plant # 5 under the "no recommendation" category.

Appellees also presented testimony involving a work force reduction implemented by Mobil at a time prior to the accident. A number of employees objected to the reduction and the issue went to arbitration. Mobil's interpretation of the collective bargaining agreement as permitting the reduction in force was accepted by the arbitrators. The trial testimony was inconclusive as to the effect upon plant safety of the reduction, and as to whether the presence of an additional employee on the plant grounds at the time of Ballenger's accident would have increased safety.

■ For our purposes it is unnecessary to reach a conclusion as to whether this evidence sufficed to establish gross negligence *prima facie*. Assuming that it did, we look to Mobil's proof to determine whether that evidence clearly demonstrated "some care" as opposed to "a total want of" care in the maintenance and operation of the equipment responsible for the accident.

Plaintiffs-Appellees rely almost exclusively on Phillips Oil Co. v. Linn, 5 Cir. 1952, 194 F.2d 903 as to this issue. This court in *Phillips* applied a standard of care test established by the Texas jurisprudence in an unbroken line of decisions and reaffirmed in 1964 by the Supreme Court of Texas in Sheffield Division, Armco Steel Corp. v. Jones, supra. *Phillips* approved a finding of gross negligence by a jury, one of the

rare instances in which "a plaintiff in a case like the one at bar has carried the seemingly impossible burden imposed by this (Texas) view of gross negligence." Woolard v. Mobil Pipe Line Co., 5 Cir. 1973, 479 F.2d 557, 565.[1]

The employee in *Phillips* was killed while operating a sandblasting machine. A hose attached to the machine was marked "H.P. Air," meaning high pressure air, but in reality carried high pressure gas. A spark from the blasting operation ignited the gas and the employee was killed. The evidence established that the employee's foreman had known for a substantial period of time that the hose was mismarked and that a consequent lethal danger existed. The foreman at one time wrote "gas" on the hose in soapstone but the marking had worn off some time prior to the accident, as the foreman testified that he had expected. It was held that the soapstone marking was tantamount to no care at all. In the absence of any other conduct evidencing any care this was the basis for the defendant's liability.

The issue before us is similar in all respect to that in *Phillips*. We must decide whether Mobil's proof showed its exercise of any care whatsoever. Only thus may *Phillips* be distinguished. An affirmative response to the question seems to us inescapable.

We have alluded above to Harvey Harrell's testimony concerning work orders and also about the occasion when he found the regulator valve sticking partially open. His solution was to use the block valve located *above* the regulator to seal the pipe completely so that nothing could escape. This block valve was a safety measure, a device to be used in the event that the regulator valve did

1. We noted in *Woolard*, 497 F.2d at 565:
   "As these cases indicate, the Texas view of gross negligence contemplates something just short of intentional wrongdoing. Indeed, the summary contained in 13 Tex.Jur. Sec. 133 and quoted approvingly in *Sheffield*, supra, states that recovery of exemplary damages requires a showing, not merely that defendant could have or ought to have foreseen the injury, but that 'he acted intentionally or willfully or with that degree of "gross negligence" which approximates a fixed purpose to bring about the injury of which Plaintiff complains.' The Texas standard demands both advertence to an unreasonable risk of harm to the plaintiff and an entire want of care (not merely a failure to take reasonable precautions) to avoid harm to the plaintiff."

stick. The record is silent as to why the operator on the day in question did not (or could not) use this block valve, but its purpose and existence are undisputed.

A similar situation obtained in Loyd Electric Co. v. De Hoyos, Tex.Civ.App. 1966, 409 S.W.2d 893. There an employee was killed while working with inflammable fuel, some of which was contained in drip pans situated near electrical connections. An accidental ignition of the fuel in the drip pans by a spark from the electrical connection caused the fatal accident. While a safer clamp for the electrical connection was available, it was held that the use of any clamp, coupled with the fact that fire extinguishers previously used to prevent fire damage were nearby, established the exercise of *some* care by the employer. In the instant case while a single block valve may not have been the best way to safeguard against regulator malfunction, it was an acceptable way, and was one that had worked successfully in the past.

The work order and safety committee system at Mobil evidences further care by the defendant. The view most favorable to the appellees is that the work order requests recalled by the witnesses were not honored and that the union safety committee communicated that fact to Mobil. Accepting that view, the existence of the system itself still evidences *some* care under principles established by the Texas courts, unless of course the system was a mere sham, a matter not even attempted to be shown by appellees. The plaintiffs' evidence only shows that the system did not operate as effectively as it was intended to on the occasion in question.

Woolard v. Mobil Pipe Line Co., supra, recently presented this court with an analogous dispute. There an employee at a metering station was killed when liquid petroleum gas he was handling ignited. The work procedures and safety devices may have evidenced a lack of ordinary care on the part of the defendant, the court said, but "the obstacle to recovery of exemplary damages . . . is the fact that *Mobil Pipe Line* had taken measures to avoid such a tragedy . . ." Woolard v. Mobil Pipe Line Co., supra, 479 F.2d at 566. The situation here, as in *Woolard* is one of insufficient care, not one of no care whatsoever.

Mobil's equipment inspection system further distinguishes this case from *Phillips*. That system was designed and intended to reveal defects in things such as the regulator valve involved here. Every four years a "unit turnaround" was performed, and all equipment was serviced. The hose in *Phillips* could have remained mismarked or unmarked forever, but a faulty valve at Mobil would be serviced and repaired at the very least by the time of its scheduled inspection. Four years is arguably an unreasonable maintenance interval but provision for it nonetheless must still be viewed as the exercise of *some* care.

### CONCLUSION

Our holding today conforms with both the Texas Supreme Court's interpretation of gross negligence in Art. 8306, Sec. 5, V.A.C.S., and the application of that interpretation by this court in diversity cases raising the issue. A plaintiff may not recover exemplary damages if a defendant has shown the exercise of some care with respect to the causal factors involved. Mobil met the burden of showing that it exercised such care. Upon remand the lower court is directed to enter judgment for Mobil.

Reversed and rendered.