United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 8, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 02-40698

———————

OZAN PATTERSON, Individually & as Rule 23 Class Representative on behalf of all other similarly situated individuals; JOHN BALLENGER, Individually & as Rule 23 Class Representatives on behalf of all other similarly situated individuals,

Plaintiffs - Appellants,

versus

MOBIL OIL CORPORATION; FORUM INSURANCE COMPANY; MOBIL CORPORATION; GLENDA MATOUSE, Individually & as Agent for Mobil Oil Corporation; ROBERT GRONWALDT, Individually & as agent for Mobil Oil Corporation; BEN STIFF, Individually & as agent for Mobil Oil Corporation; CHARLES TEEPLES, Individually & as Agent for Mobil Oil Corporation; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; AIG NATIONAL INSURANCE COMPANY; AIG RISK MANAGEMENT INC; AIG INC; ENERGY PRINTING INC; AMERICAN HOME ASSURANCE COMPANY; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Defendants - Appellees.

———————————————————————————————

THOMAS J BALLENGER,

Plaintiff,

ELLA RAY WHITEHEAD,

Appellant,

versus

MOBIL OIL CORPORATION,

Defendant - Appellee.

---

Appeal from the United States District Court
For the Eastern District of Texas

---

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and DUVAL,[*] District Judge.

EMILIO M. GARZA, Circuit Judge:

This case arises from a wave of state and federal litigation brought by employees and former employees of Mobil, as well as their relatives. Generally, the employees assert that Mobil failed to comply with Texas workers' compensation law, such that Mobil was never a valid subscriber to the workers' compensation system. Under Texas's scheme, employees covered by subscriber-purchased policies receive compensation on a no-fault basis, and, in exchange, subscribing employers benefit from an exclusive remedy provision. This provision prevents employees from suing subscribers for negligence. Thus, the theory is that these employees were injured because Mobil's allegedly fraudulent representations that it was a subscriber caused them to forgo negligence lawsuits against Mobil.

In the instant case, the plaintiffs, Ozan Patterson and John Ballenger, are using this theory to allege a variety of civil violations under the Racketeer Influenced and Corrupt Organizations Act

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

("RICO"), 18 U.S.C. § 1861 *et seq.* Originally, Patterson and Ballenger brought this suit as a class action under FED. R. CIV. P. 23, but we previously vacated the district court's class certification. *See Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. 2001). Upon remand, the district court granted summary judgment to the defendants. The plaintiffs timely appeal.

I

The issues presented by this case necessitate a detailed recitation of the facts and procedural background, including a brief summary of the allegations in the pleadings and the roles of the parties. In the primary cause of action, the plaintiffs allege that Mobil violated RICO by conspiring with various insurers and claims adjusters over a thirty-year period (hereinafter "the RICO suit"). Specifically, they allege that the defendants engaged in a long-term scheme to deprive the plaintiffs of their common-law negligence causes of action against Mobil for workplace injuries. Mobil allegedly used "fronting" insurance companies to obtain "sham" workers' compensation policies in order to hide the fact that it was self-insuring, which was not permitted by the Texas workers' compensation scheme then in force. Further, the plaintiffs allege that the defendants used the interstate mail and telephone wires to further this illegal enterprise.

During the relevant years, Mobil obtained its workers' compensation insurance from several different companies. Pre-1970 through 1981, Mobil's insurer was Forum Insurance Company ("Forum"); from 1982 through 1991, Mobil's insurer was National Union Fire Insurance Company of Pittsburgh, Pennsylvania; in 1992, Mobil's insurer was American Home Assurance Company; and, in 1993, Mobil was insured through the Insurance Company of the State of Pennsylvania. All are named as defendants in the RICO suit. The latter three insurers are members of the American International Group of Companies ("AIG") and other various AIG companies have also been named

as defendants (collectively, the "AIG Defendants"). In addition, the plaintiffs have sued Glenda Matous and Robert Gronwaldt, representatives of AIG who adjusted Mobil workers' compensation claims, individually and as agents of Mobil.

Patterson was a Mobil employee from 1947 to 1982. In 1974, 1976, 1979, 1981, and 1982, Patterson suffered on-the-job injuries. For each injury, Patterson sought and received workers' compensation benefits from Mobil's various insurers. Ballenger is the son of Thomas J. Ballenger, who died in 1970 from burns sustained after an explosion at a Mobil plant. Ballenger's mother, Ella Ray Whitehead, sought and received workers' compensation benefits from Forum, Mobil's carrier at that time. She also filed suit, on behalf of her and her surviving children, against Mobil, claiming gross negligence and seeking punitive damages. *See Ballenger v. Mobil Oil Corp.*, 488 F.2d 707, 708-09 (5th Cir. 1974). The jury found Mobil grossly negligent, but we reversed, concluding that the evidence did not support that finding. *Id.* at 708, 713. During that suit, Mobil stated in its pleadings that it had workers' compensation insurance.

On March 23, 1999, the same day the plaintiffs filed the RICO suit, Whitehead filed a "Request for Relief from Judgment" under FED. R. CIV. P. 60(b) ("the Rule 60(b) motion"). She requested that the district court set aside the 1974 *Ballenger* judgment, arguing that Mobil had perpetrated a fraud on the court by representing that it had workers' compensation insurance.[1]

---

[1]This case also has an extended and complex litigation history in state court. First, both plaintiffs were members of a class action suit, filed in 1992, which involves similar theories and defendants. *McClelland v. Gronwaldt*, No. A-144,481 (58th Dist. Ct., Jefferson County, Tex.). Most recently, a Texas Court of Appeals reversed the class certification on procedural grounds. *See Gronwaldt v. McClelland*, Nos. 09-99-125-CV, 09-99-591-CV, 2000 WL 800572, at *5 (Tex. App.—Beaumont June 22, 2000, no pet. h.) (unpublished).

In addition, on October 5, 1998, Patterson and Ballenger filed separate suits based on various state causes of action in the 60th Judicial District of Jefferson County, Texas. *Patterson v. Mobil Corp.*, No. B-159,657 (60th Dist. Ct., Jefferson County, Tex.); *Whitehead v. Mobil Corp.*, No. B-

The RICO suit was originally assigned to Judge Fisher. Just after granting class certification, Judge Fisher recused himself, *sua sponte*, without explanation. The case was reassigned to Judge Cobb.[2] The defendants immediately moved to have the certification order vacated, arguing that it was inappropriate for Judge Fisher to have ruled on the issue since nobody knew why Judge Fisher recused himself or when the conflict came to Judge Fisher's attention.

The plaintiffs moved to have Judge Cobb recuse himself, citing 28 U.S.C. §§ 144 and 455 as support. Specifically, they alleged that disqualification was mandatory because John Tucker, a partner in Judge Cobb's former law firm, Orgain, Bell & Tucker, L.L.P. ("OB&T"), represented Mobil in the original *Ballenger* suit while Judge Cobb was still a partner at that firm. The plaintiffs also argued that Judge Cobb's impartiality might reasonably be questioned because of his relationship with Tucker and OB&T. Finally, they contended that Judge Cobb was actually biased because he might be required to consider the actions of his former law partner and law firm during the course of the case. In particular, they noted that Tucker was one of the lawyers representing Mobil in the

159,657 (60th Dist. Ct., Jefferson County, Tex.). The Ballenger case is set for trial in September 2003.

Although not all of the above information on the state court proceedings is part of the record on appeal, we may take notice of pending judicial proceedings. *See, e.g.*, *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 246 n.3 (5th Cir. 1997). In fact, Patterson and Ballenger have formally moved us to take judicial notice of several documents. We grant the motion with respect to (1) the transfer order from the 58th Judicial District Court of Jefferson County, and (2) the letter agreement setting the Ballenger trial for September 23, 2003. We deny the motion with respect to Mobil's state court pleading (document 3). The AIG Defendants opposed this motion and conditionally requested that we take judicial notice of an October 4, 2002 state court hearing transcript. That motion is denied.

[2]Judge Cobb also ended up with the Rule 60(b) motion. Initially, the motion was assigned to Judge Fisher, but it was reassigned to Judge Heartfield after Judge Fisher passed away. Upon discovering that a family member was an attorney of record for Mobil, Judge Heartfield recused himself, and the motion was reassigned to Judge Cobb.

RICO suit.[3] The plaintiffs also submitted an affidavit from John Ballenger in which he stated that he believed Judge Cobb was biased against his case and would not be able to preside impartially over the RICO suit.

At the hearing on the defendants' motion to vacate, Judge Cobb asked the plaintiffs whether Tucker or OB&T were mentioned in the complaint or whether the plaintiffs were seeking recovery against Tucker or the firm. The plaintiffs answered no to both questions, and Judge Cobb denied the motion to disqualify. Following this, the plaintiffs petitioned this court for a writ of mandamus, seeking Judge Cobb's disqualification, and we denied that petition. *In re Patterson*, No. 00-40001 (5th Cir. Jan. 10, 2000) (unpublished) (order denying mandamus).

After this court reversed the class certification, the defendants moved for summary judgment and the plaintiffs made a supplemental motion for disqualification. The basis of the plaintiffs' motion was new evidence that Judge Cobb had represented Forum in a Mobil workers' compensation case in 1975. *See Forum Ins. Co. v. Mitchell*, No. A-98,195 (58th Dist. Ct., Jefferson County, Tex. Apr. 25, 1975) (unpublished). They contended that this gave Judge Cobb personal knowledge of relevant facts, including whether Forum was a sham company that was actually controlled by Mobil at that time and whether Mobil was a valid subscriber in the Texas workers' compensation system. The defendants opposed the motion. Judge Cobb noted in a later order that he was asked to recuse himself in an earlier stage of the *McClelland* litigation[4] for similar reasons, but had refused to do so.

---

[3]Tucker is not listed as an interested party or counsel at the beginning of Mobil's appellate brief, but he was listed as Of Counsel for Mobil at least as late as December 16, 1999, when the defendants filed their motion to vacate the class certification.

[4]At one point, Mobil removed the *McClelland* litigation to federal court on grounds of federal question jurisdiction. On interlocutory appeal, we held that federal question jurisdiction was lacking and that an exercise of supplemental jurisdiction would be an abuse of discretion. *McClelland v.*

In one of his final memorandum orders, Judge Cobb explicitly stated that his position as Forum's counsel of record twenty-seven years ago in a separate litigation did not warrant disqualification and emphasized that the plaintiffs' earlier attempt to secure disqualification from this court had been unsuccessful. He then denied the motion to disqualify.

In a separate order, the district court granted the defendants' motion for summary judgment and denied the Rule 60(b) motion. Plaintiffs now appeal Judge Cobb's refusal to stand recused and the adverse summary judgment ruling.[5]

II

We first address the recusal issue. The denial of a motion to recuse is reviewed for abuse of discretion. *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999) (citing *In re Billedeaux*, 972 F.2d 104, 106 (5th Cir. 1992)).

A

Under 28 U.S.C. § 144, a judge is to recuse himself if a party to the proceeding "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party . . . ." A party may only file one such affidavit for that case. *Id.* In addition, the affidavit must be filed "not less than ten days before the beginning of the term at which the proceeding is to be heard" unless good cause is shown, and the affidavit must state the facts and reasons for the party's belief that bias or prejudice exists. *Id.*

_____

*Gronwaldt*, 155 F.3d 507, 521 (5th Cir. 1998). Thus, we remanded the case to state court. *Id.*

[5]Plaintiffs do not, however, brief the merits of the Rule 60(b) motion. Although they contend the ruling should be vacated because Judge Cobb erred by failing to stand recused, they do not point to any legal error in the Rule 60(b) ruling. Issues not briefed on appeal are waived. *See United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000). Thus, we consider the Rule 60(b) ruling only as it relates to the recusal issue.

This provision relates only to charges of actual bias. *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990). When a party files a § 144 motion, the judge must pass on the sufficiency of the affidavit, but may not pass on the truth of the affidavit's allegations. *Id.* A legally sufficient affidavit must: (1) state material facts with particularity; (2) state facts that, if true, would convince a reasonable person that a bias exists; and (3) state facts that show the bias is personal, as opposed to judicial, in nature. *Id.*

Admittedly, Judge Cobb did not specifically address the sufficiency of Ballenger's § 144 affidavit during the hearing or in his written order. He did, however, refer to the recusal analysis he published in the *McClelland* case. *See McClelland v. Gronwaldt*, 942 F. Supp. 297, 299-303 (E.D. Tex. 1996). In that case, the plaintiffs filed a § 144 motion and accompanying affidavit, arguing that Judge Cobb was biased because of his association with OB&T. Judge Cobb's ruling on the issue went into painstaking detail and concluded that McClelland's affidavit failed the reasonable person test. *Id.* at 301.

Although Ballenger's affidavit is slightly more specific than the one at issue in *McClelland*, we find that it suffers from the same overall defect. Judge Cobb's relationship with Tucker and OB&T is, by itself, insufficient to convince a reasonable person that Judge Cobb would be biased against the plaintiffs or in favor of Mobil. Tucker's representation of Mobil in the *Ballenger* suit is also insufficient. That suit was litigated more than twenty-five years ago, and it has little bearing on the merits of the present action. It was a workers' compensation suit involving Mobil, and Mobil's participation in Texas's workers' compensation system had no direct bearing on whether it was

-8-

grossly negligent with regard to the explosion that fatally injured Ballenger's father.[6]  Finally, Judge

Cobb's representation of Forum on a separate matter from long ago does not prevent him from ever

hearing cases in which Forum or Mobil are parties.  *See Chitimacha Tribe of La. v. Harry L. Laws

Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982).  Thus, we conclude that Judge Cobb did not abuse his

discretion when he denied the plaintiffs' § 144 motion.

B

Recusal is also addressed in 28 U.S.C. § 455.[7]  The plaintiffs continue to argue that Judge

Cobb was required to recuse himself under § 455(a), § 455(b)(1), and § 455(b)(2).  We consider each

in turn, again reviewing for abuse of discretion.  *United States v. Monroe*, 178 F.3d 304, 309 (5th

Cir. 1999).

---

[6]We recognize that the issue is tangentially related to the present suit.  Obviously, if Mobil's subscriber status had been found invalid in 1971, then Whitehead and her children would have been able to sue Mobil for simple negligence.  Nonetheless, the possibility that another cause of action against Mobil might have been available thirty years ago is remote and speculative.  It is not as if Whitehead attempted to bring a negligence suit at the time and failed.  Accordingly, that possibility has no bearing on whether a reasonable person would think Judge Cobb, a man with considerable judicial experience, would actually be biased all these many years later.

[7]In relevant part, 28 U.S.C. § 455 reads as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> > (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it . . . .

When considering a claim under § 455(a), we must consider "whether a reasonable and objective person, knowing all of the facts, would *harbor doubts* concerning the judge's impartiality." *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997) (internal quotation marks omitted) (emphasis added). This is because the goal of this provision is to "avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (internal quotation marks omitted). Thus, recusal may be required even though the judge is not actually partial. *In re Cont'l Airlines Corp.*, 901 F.2d 1259, 1262 (5th Cir. 1990).

The plaintiffs have a stronger argument under this provision than under § 144, although we are not convinced that these facts would cast doubt in a reasonable person's mind regarding Judge Cobb's impartiality. At first glance, a reasonable person might be inclined to think Judge Cobb could be biased in favor of his former law partner and firm, especially given Judge Cobb's participation in at least one similar case. But a reasonable person would temper this inclination with the knowledge that the events in question occurred almost three decades ago. Thus, considering *all* the relevant facts, one could conclude that Judge Cobb did not abuse his discretion with regard to § 455(a). Nevertheless, we recognize that this is a close question. "'[I]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal.'" *In re Chevron*, 121 F.3d at 165 (quoting *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995)); *see also In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1998) (noting that "'[p]eople who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges'" (quoting *Liljeberg*, 486 U.S. at 864-65)). We are bound to conclude that, given the specific facts alleged in the plaintiffs' original and supplemental motions to disqualify, Judge Cobb should have recused himself under § 455(a). Thus, we need not address the other provisions of § 455.

C

1

Although we conclude that Judge Cobb should have stood recused under § 455(a), we do not automatically vacate the rulings issued after he should have recused himself. In our circuit, the "harmless error" rule has long been applied in this context. *Monroe*, 178 F.3d at 309; *United States v. O'Keefe*, 128 F.3d 885, 892 (5th Cir. 1997); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 458-59 (5th Cir. 1996); *In re Continental*, 901 F.2d at 1263. We consider the following factors in determining whether reversal or vacation is mandated: (1) the risk of injustice to the parties in this case; (2) the risk that denial of relief will create injustice in other cases; and (3) "the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864; *In re Continental*, 901 F.2d at 1263.

The plaintiffs dispute the applicability of the harmless error rule, arguing that when a judge erroneously fails to stand recused, our precedent dictates that the judge's post-recusal orders must be automatically vacated. *Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1028 (5th Cir. 1998); *see also Republic of Pan. v. Am. Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *Tramonte*); *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999) (same). To the extent *Tramonte* and the cases that cite it are inconsistent with *In re Continental* and its progeny, the older line controls. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 541 n.9 (5th Cir. 2002) (reiterating that one panel of this court cannot overrule an earlier panel's decision). This conclusion is bolstered by the fact that the rule established in *In re Continental* is based on the clear wording of *Liljeberg*, wherein the Supreme Court stated "relief is . . . neither categorically available nor categorically unavailable for all § 455(a) violations." 486 U.S. at 864. *Liljeberg* also announced the factors applied by this court

-11-

in *In re Continental*. *Id.*

Finally, although the plaintiffs focus many of their recusal arguments on § 455(b)(2), we reiterate that we need not consider Judge Cobb's decision with respect to this provision. It could only be relevant if the harmless error test appl ied to § 455(a), as we conclude above, but not to § 455(b). For the reasons given in *Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994), we are confident that § 455(b) violations are also subject to the doctrine of harmless error. *Id.* at 1571.

2

We now apply the harmless error test of *In re Continental* to the district court's subsequent rulings; specifically, its summary judgment ruling in the RICO suit and its denial of the Rule 60(b) motion. With regard to the first prong, we noted in *In re Continental* that the "risk of injustice to the parties in allowing a summary judgment ruling to stand is usually slight." 901 F.2d at 1263. Because we review a summary judgment ruling *de novo*, using the same standards as the district court, the parties are guaranteed a fair, impartial review of the merits of the ruling. As we stated in *In re Continental*: "In cases where we would otherwise affirm such a ruling, little would be gained by vacating and remanding with instructions that it be essentially reinstated." *Id.*

The grant or denial of Rule 60(b) relief is reviewed for abuse of discretion, however. *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 800 (5th Cir. 2002). Nonetheless, given the long period of time between the original *Ballenger* judgment and the Rule 60(b) motion, as well as the motion's unique relationship to the RICO suit, we find that the possibility of injustice to the parties is slight. The Rule 60(b) motion is premised on Mobil's alleged fraud with respect to its subscriber status. Accordingly, the merits of the motion will be determined by our *de novo* evaluation of the district court's summary judgment ruling, which was based on the fraud issue. Thus, we find the first

prong of the harmless error test satisfied.

Next, we consider whether it is likely that our refusal to vacate the post-recusal orders would create injustice in future cases. Again, we note that other cases appealed after a summary judgment ruling will receive fair, impartial treatment from this court. Moreover, our holding that Judge Cobb erred by failing to stand recused will serve as a cautionary note to future district courts considering recusal motions in similar circumstances. Thus, we find the risk of injustice to other cases to be slight, and so the second prong is met.

Finally, we do not believe the public's confidence in the judicial process will be undermined if we hold the violation of § 455(a) to be harmless error. The public will recognize that we have clarified that, under these circumstances, a judge should recuse himself. In addition, reasonable people will recognize that almost thirty years passed between the events in question and the district court's present rulings. The notion that all conflicts fade with time is a strong one, and we are confident that this notion will moderate the public's reaction. In fact, in light of the long passage of time, the public may be more inclined to lose faith in the system if this court were to mindlessly vacate Judge Cobb's rulings. *See In re Continental*, 901 F.2d at 1263. Thus, we find that the § 455(a) violation constituted harmless error.

III

A

Finding the recusal error to be harmless, we turn to the merits of the district court's summary judgment ruling. The district court held that the defendants were entitled to summary judgment because the evidence showed that Mobil had workers' compensation insurance from 1961 through 1995, and thus was a subscriber in Texas's system. Further, it held that Ballenger and Patterson had

not raised a genuine issue of material fact as to whether Mobil's arrangements with its various workers' compensation insurers were fraudulent under Texas law.

Thus, the district court's decision was based entirely on Texas law. For this reason, Mobil, Forum, Matouse and Gronwaldt have asked this Court to certify the following question to the Texas Supreme Court:[8]

> Where an employer is the holder of a policy of workers' compensation insurance from an authorized insurer and gives notice of such to its employees, is the employer's right to the exclusive remedy provisions available to a "subscriber" under the Texas Workers' Compensation Act conclusively established?

The plaintiffs oppose this motion, arguing that we should not ask the Texas Supreme Court to consider this case because the record is too undeveloped. Alternatively, the plaintiffs ask that we abate this appeal pending the outcome of Ballenger's state court action.

The decision of whether to certify a question lies within our sound discretion. *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 656 (5th Cir. 2002). As a general rule, we do not use certification as a "panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 274 (5th Cir. 1999) (internal quotation marks omitted). Although the state law questions created by this case are important and complex, we feel, for the reasons given *infra* in Part III.B, that Texas law is sufficiently clear. Accordingly, we deny the defendants' motions to certify and we deny the plaintiffs' motion to abate the appeal.

B

---

[8]The AIG Defendants do not oppose this motion. Instead, they ask that, should we grant certification, we also certify several sub-issues. We treat this as a second motion for certification.

As noted above, we review a grant or denial of summary judgment *de novo*, using the same criteria employed by the district court. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001). Summary judgment is proper if, drawing all inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c). Generally, the plaintiffs must establish a genuine issue of material fact regarding Mobil's status as a workers' compensation subscriber.[9] We consider each of the plaintiffs' contentions in turn.[10] At the outset, however, it should be emphasized that although we conclude that many of Mobil's actions were improper or illegal, these actions did not affect its status, under Texas law, as a workers' compensation subscriber and thus did not affect its entitlement to the exclusive remedy protection of the workers' compensation system.

1

---

[9]The plaintiffs argue that Mobil bears the burden of establishing its status as a workers' compensation subscriber. We disagree. In a common-law negligence suit, Mobil would be required to prove its subscriber status as part of its affirmative defense that it was enti tled to the exclusive remedy protections of the workers' compensation system. This is not a common-law negligence suit, however. It is a RICO action. To maint ain a civil RICO action using mail and wire fraud as the predicate acts, the plaintiff must show that the defendant engaged in a scheme to defraud and used the mail or wires to execute that scheme. *See* 18 U.S.C. §§ 1341, 1343, 1961(1)(B). In the present case, the plaintiffs argue that the scheme to defraud was Mobil's false representations to its employees that it was a subscriber. Thus, it is the plaintiffs' burden to show that a scheme to defraud existed by showing that Mobil was not a subscriber. Of course, if a party bears the burden of proof at trial, it also bears that burden at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-26 (1986).

[10]At the outset, we note that the period of time covered by the RICO suit spans two different workers' compensation systems in Texas. The "old" system, adopted in 1914 and repealed in 1991, was codified at TEX. REV. CIV. STAT. ANN. arts. 8306 *et seq*. The current scheme is codified at TEX. LAB. CODE ANN. § 401 *et seq*. We have considered both and find them to be substantively identical for the purposes of our analysis. In addition, none of the parties suggest that the outcome of this suit depends on differences between the two schemes. Thus, for clarity and brevity, we refer only to the "old" scheme because that scheme was in effect during most of the twenty-odd years at issue, although our legal conclusions hold for both.

First, the plaintiffs argue that Mobil was not a subscriber during the years that Forum was its insurer because Mobil and Forum have not proven that Mobil actually purchased policies from Forum during the relevant years. Moreover, the plaintiffs emphasize that Forum was a subsidiary of Mobil and that Forum was completely controlled by Mobil. According to the plaintiffs, Forum was nothing more than a "front for self-insurance" and so Mobil was not a valid subscriber.

Under the relevant statutory scheme, a workers' compensation subscriber is defined as "any employer who has become a member of the association *by paying the required premium*; provided that the association holds a license issued by" the Texas Commissioner of Insurance. TEX. REV. CIV. STAT. ANN. art. 8309, § 1 (Vernon 1967) (emphasis added). "Association" is defined as the state-created workers' compensation carrier "or other insurance company authorized" to write workers' compensation policies. *Id.* Thus, the plaintiffs are correct that, in order to achieve subscriber status, Mobil was required to obtain a workers' compensation policy by paying a premium to an authorized insurer.[11]

In response to this allegation, the defendants produced the following proof: (1) Certificates of Authority for Forum issued by the State of Texas, which indicate that Forum was authorized to write workers' compensation insurance during the relevant period; (2) declaration pages from the workers' compensation policies issued by Forum from 1970 to 1981, accompanied by the sworn affidavit of an authorized agent for Forum stating that the declaration pages were true and correct

---

[11]Mobil was also required to provide notice to its employees that it was a participant in the workers' compensation system, either by filing constructive notice with the Industrial Accident Board or by providing actual notice. TEX. REV. CIV. STAT. ANN. art. 8306, § 3c, art. 8308, §§ 18a–20 (Vernon 1967). Mobil submitted summary judgment evidence that it provided both kinds of notice during the entire time period in question, and plaintiffs do not dispute this. For the purposes of this case, we consider the notice requirement to be met.

-16-

copies; and (3) copies of notices of coverage from the Industrial Accident Board, indicating that Mobil was a subscriber in the system during each of the eleven years. Despite this overwhelming proof, the plaintiffs persist in their argument that there is a genuine issue of material fact because (1) the defendants have not produced the policies themselves, but only the declaration pages, and (2) Mobil and Forum have not shown that the premium funds actually exchanged hands. We find these arguments to be meritless. *Martinez v. H.B. Zachry Co.*, 976 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (finding a copy of the information page of a workers' compensation policy, accompanied by a sworn affidavit from an agent stating that the copy was true and correct, to be sufficient to establish the employer was a subscriber at the summary judgment stage); *see also Dealers Nat'l Ins. Co. v. Simmons*, 421 S.W.2d 669, 672 (Tex. Civ. App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.) (accepting copy of voluntary endorsement and testimony of employer that policy had been issued but destroyed after it expired as evidence that the policy was issued). The plaintiffs cannot suggest that there is a genuine issue of material fact on this point simply by listing the other possible evidence of coverage that Mobil and Forum could have produced.

Likewise, we reject the plaintiffs' self-insurance argument.[12] The workers' compensation scheme does not forbid an employer and an insurer from being one and the same. *Otis Elevator Co.*

---

[12]In fact, we find the plaintiffs' argument on this point to be smoke and mirrors. Generally, "self insurance" means that one has established reserves for future losses instead of purchasing insurance. Such action would certainly fall outside the bounds of Texas's "old" workers' compensation system. But Mobil and Forum have essentially uncontroverted evidence of insurance policies and repeated contractual relationships. Under Texas law, if a Mobil worker was injured during the term of one such policy, Forum would be liable for any workers' compensation benefits awarded, not Mobil. *See, e.g.*, *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 810, 812 (Tex. 1988). In addition, because Forum was an authorized workers' compensation insurer, the State of Texas was able to monitor the financial stability of Forum during the policy periods. Thus, this arrangement is materially different from "self insurance."

-17-

*v. Allen*, 185 S.W.2d 117, 120 (Tex. Civ. App.—Forth Worth 1944) (explicitly allowing an authorized insurer to carry workers' compensation insurance on its own employees), *aff'd in relevant part and rev'd on other grounds*, 187 S.W.2d 657, 658-59 (Tex. 1945). Even assuming the plaintiffs are correct that Forum was under Mobil's complete control during some or all of the relevant years, this is immaterial. Forum was authorized by the State of Texas to write workers' compensation policies, and Mobil obtained just such a policy. Thus, the requirements of the statutory scheme were met, and, as a matter of law, Mobil was a subscriber.

2

Second, the plaintiffs contend that Mobil was not a subscriber during the years it was insured by the AIG Defendants, 1982 through 1993, because the AIG Defendants only fronted coverage for Mobil and thus Mobil was actually self-insured. This self-insurance argument is similar to the one mentioned above, *see supra* Part III.B.1, but the alleged scheme is slightly more complex. During this period, Mobil supposedly engaged in a cash-flow retrospective plan. Under this plan, Mobil had the insurer file a conventional retrospective rated insurance policy with the state, but did not actually pay the premium indicated by that policy. Instead, Mobil paid only a fraction of that premium to cover the insurer's expected losses paid, expenses, insurance risk premium and premium taxes. In addition, Mobil issued letters of credit to the insurer for the difference between the conventional premium and the amount actually paid. Mobil also reinsured the insurer's risk through an off-shore subsidiary. Through this complex arrangement, Mobil and its reinsurance subsidiary became the true insurers of the risk associated with Mobil's workers' compensation program.

Mobil does not dispute that it used this "cash-flow retro" plan. Instead, it argues that such an arrangement does not invalidate its subscriber status because its side agreements with the insurer

-18-

and reinsurer are immaterial. Our review of the summary judgment evidence leads us to believe that Mobil's cash-flow retro plan was, at the very least, highly improper. Mobil was aware that such a plan had been formally forbidden by the Texas State Board of Insurance,[13] but chose to use a cash-flow retro plan anyway because it was significantly cheaper. Moreover, Mobil designed the arrangement with a number of safeguards to avoid detection. Nonetheless, Mobil is correct that, under Texas law, its status as a subscriber was not invalidated by its use of this arrangement.

The wording of the Texas Insurance Code is clear:

> The Board [of Insurance] shall prescribe a uniform policy for workmen's compensation insurance . . . and *any contract or agreement not written into the application and policy shall be void and of no effect* and in violation of the provisions of this subchapter, and shall be sufficient cause for revocation of license to write workmen's compensation insurance within this State.

TEX. INS. CODE ANN. art. 5.57 (emphasis added). Further, the Texas courts have repeatedly held that a "side agreement to a valid and enforceable workers' compensation policy which violates a statutory or regulatory requirement is invalid and ineffective." *Brookshire Grocery Co. v. Bomer*, 959 S.W.2d 673, 676 (Tex. App.—Austin 1997, pet. denied) (listing cases); *Associated Employer Lloyds v. Dillingham*, 262 S.W.2d 544, 546 (Tex. Civ. App.—Forth Worth 1953, writ ref'd) (holding that a contract to rebate part of the premium in the policy, directly or indirectly, is illegal and void and cannot be a defense to a suit for the full premium brought by the insurer's receiver); *Glenn H.*

---

[13]In 1980, the State Board of Insurance issued Workers' Compensation Bulletin No. 511, which clearly stated that "paid loss retrospective" or "cash flow" plans were of great concern to the department because they fell outside the uniform policy approved by the board and referred to in TEX. INS. CODE art. 5.57. The bulletin concluded that insurers "that write such plans are subjecting themselves to possible disciplinary action by this Department." It did not, however, indicate that use of such a plan would invalidate an employer's subscriber status. Thus, this bulletin is not probative of the legal issue before us.

*McCarthy, Inc. v. Knox*, 186 S.W.2d 832, 836-38 (Tex. Civ. App.—Galveston 1945, writ ref'd w.o.m.) (same).

Thus, the cash-flow retro agreements between Mobil and the AIG Defendants were illegal and void. The conventional policies executed by the parties and filed with the state remained in full force and effect during the years in question. If the AIG Defendants had become bankrupt and their trustees had chosen to sue Mobil for the premiums it did not pay, Mobil might well have been liable. In addition, if the scheme had been discovered by the appropriate state agencies, Mobil and the AIG Defendants would undoubtedly have been fined, and the AIG Defendants might have lost their workers' compensation insurance licenses. *See* TEX. INS. CODE ANN. art. 5.57. But nothing in Texas's statutory law or case law suggests that these illegal cash-flow retro arrangements would have affected Mobil's subscriber status.[14]

The defendants have provided copies of the entire policies issued by the AIG Defendants to Mobil for the relevant policy years, as well as authenticating affidavits. We have examined the policies and find no mention of a rebate system or cash-flow arrangement in any of them. We conclude that these policies remained valid during their terms and satisfied the necessary conditions for Mobil to achieve subscriber status. *See Tankersley v. Durish*, 855 S.W.2d 241, 248 (Tex. App.—Austin 1993, writ denied) ("Where the illegal agreement is not incorporated in the policy, but is apart from it, the policies themselves are valid."); *see also* TEX. INS. CODE ANN. art. 5.57; TEX.

---

[14]Presumably, this reflects a conscious choice by the state legislature and judiciary. It is not our task to say what sanctions are appropriate in this context. In fact, a bias against depriving employers of their subscriber status for this type of violation may be wise. It creates a level of certainty in the workers' compensation system and ensures that workers will not be deprived on the benefits of the system every time an employer or insurer violates the state's various administrative rules and regulations. *See, e.g.*, *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex. 1997) (concluding that "Texas [has] an interest in maintaining a stable workers' compensation system").

REV. CIV. STAT. ANN. art. 8309, § 2 (Vernon 1967) (stating that when an authorized insurer "issues a policy conditioned to pay [workers'] compensation, the holder of such policy shall be regarded as a subscriber so far as applicable under this law").

3

Third, the plaintiffs contend that Mobil's own employees adjusted Mobil's workers' compensation claims from 1965 to 1994, in violation of Texas law. They argue that this precludes summary judgment on the issue of whether Mobil qualified as a workers' compensation subscriber. After considering the arguments of the parties and the applicable state law, we again conclude that Mobil's actions were probably illegal. Again, however, we cannot conclude that these actions deprived Mobil of its subscriber status under state law.

The plaintiffs first cite to TEX. INS. CODE ANN art. 1.14-1, which was repealed in 1999. Although it existed in various forms over the thirty-year period at issue, article 1.14-1 generally addressed unauthorized insurance. It included the act of adjusting claims or losses in the definition of "insurance business" and prohibited unauthorized persons or insurers from directly or indirectly doing the acts of an insurance business. *See, e.g.*, *id.* § 2–3 (Vernon 1990). A violation of article 1.14-1 subjected the offending person or entity to administrative and civil penalties. *Id.* § 3. But the statute does not contain any language that could be interpreted to affect an employer's subscriber status. *Id.*; *see also* 28 TEX. ADMIN CODE §§ 65.5, 65.10 (suggesting that it is unethical and fraudulent for an insurer to allow an employer to adjust claims and that the remedy for such conduct is to ban the person from appearing before the workers' compensation board).

The plaintiffs attempt to buttress their argument by citing to *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988), and *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex.

-21-

1994), for the proposition that Texas law requires "the insurer or someone acting under the insurer's direct control to adjust claims, because of the insurers' duty of good faith and fair dealing" to the insured. This is undoubtedly an accurate reflection of Texas law. Neither *Aranda* nor *Natividad*, however, address the issue at hand: whether improper claims adjustment behavior by an employer prevents that employer from attaining subscriber status in Texas's workers' compensation system. Instead, *Aranda* and *Natividad* address the circumstances under which an employee may bring a tort action against a workers' compensation *insurer* for breach of the duty of good faith and fair dealing. *Natividad*, 875 S.W.2d at 697-98; *Aranda*, 748 S.W.2d at 211-14. Thus, they are almost entirely irrelevant.

*Aranda* and *Natividad* do offer one valuable insight into Texas workers' compensation law: together they indicate that the duty of good faith and fair dealing owed by an insurer to an employee is separate from the compensation claim and non-delegable. *Natividad*, 875 S.W.2d at 698; *Aranda*, 748 S.W.2d at 214. In *Natividad*, the workers' compensation insurer had contracted with an outside adjusting firm for the performance of claims handling services. 875 S.W.2d at 696. The Texas Supreme Court held that an employee's suit for breach of good faith and fair dealing was not viable against the adjusting firm because the insurer remained liable for "actions by those agents or contractors that breach the duty of good faith and fair dealing owed to the insured by the carrier." *Id.* at 698. If anything, *Natividad* indicates that Mobil's insurers would be liable to Mobil's employees for any improper claims handling under a tort theory of recovery, assuming that those employees could show the misdeeds amounted to a breach of the duty of good faith and fair dealing. In addition, the employees would almost certainly have to show that their tort claims were separate from their compensation claims and produced an independent injury. *See Aranda*, 748 S.W.2d at

-22-

214.

Mobil may have risked administrative and civil penalties when it adjusted the workers'

compensation claims of its own employees, in violation of article 1.14-1. Likewise, Forum and the

AIG Defendants may have risked tort liability or various civil sanctions by improperly allowing Mobil

to adjust claims. But, even under this worst case scenario, Mobil's subscriber status was not

invalidated.

Thus, despite the plaintiffs' vigorous arguments to the contrary, we conclude that there is no

genuine issue of material fact with regard to Mobil's subscriber status.[15] And, in turn, there is no

genuine issue of material fact that Mobil was engaged in a scheme to defraud its employees by lying

about its subscriber status during the years in question. In light of the foregoing, we find that the

district court correctly awarded summary judgment to the defendants with regard to the RICO suit.[16]

---

[15]The plaintiffs also argue that the district court abused its discretion by refusing to allow them the opportunity to conduct any discovery. They argue that, had discovery been permitted, they could have created a genuine issue of material fact sufficient to survive summary judgment.

We review a district court's discovery decisions for abuse of discretion and affirm such decisions unless they are clearly unreasonable or arbitrary. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000). We have reviewed the plaintiffs' various discovery motions and we find that the district court did not abuse its discretion. Although the plaintiffs probably could have discovered more factual information to support their arguments, the legal merits of those arguments would not have improved. In other words, any genuine issues of fact produced by the plaintiffs' discovery would not have been material. Thus, the district court properly concluded that the requested discovery was not likely to change the outcome of the summary judgment motion. *See, e.g.*, *Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993) (holding that it is not an abuse of discretion to preclude further discovery and enter summary judgment if it reasonably appears that further discovery would not create a genuine issue of material fact).

[16]The plaintiffs' RICO claims are predicated on Mobil's allegedly fraudulent representations regarding its subscriber status. *See* note 10 *supra*. Because we conclude there is no genuine issue of material fact on this issue, the plaintiffs' RICO claims must fail. Thus, it is not necessary to discuss all the possible RICO issues in detail. We suspect, however, that the plaintiffs' complaint does not state a valid RICO claim for other reasons.

IV

For these reasons, we find that the district court properly awarded summary judgment to the

defendants and we AFFIRM.

AFFIRMED; DEFENDANTS' MOTIONS TO CERTIFY IS DENIED; PLAINTIFFS'

MOTION FOR ABATEMENT OF THE APPEAL IS DENIED; PLAINTIFFS' MOTION FOR

JUDICIAL NOTICE IS GRANTED IN PART AND DENIED IN PART; AIG DEFENDANTS'

---

Even if we assume both that the plaintiffs had a valid property interest in their causes of action under Texas law and that Mobil deprived them of this property by fraudulently representing that it was a subscriber, we doubt the plaintiffs have satisfied the RICO standing requirement. A plaintiff may not sue under RICO unless he can show concrete financial loss. *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995); *accord Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992). It is undisputed that the plaintiffs received workers' compensation benefits from Mobil's insurers for each and every work-related injury at issue. Because it is unclear whether Mobil was negligent with regard to these injuries, it is possible that the plaintiffs ended up better off—that is, the plaintiffs may have recovered more by collecting workers' compensation benefits over the years than if they had exercised their right to sue. If this is in fact the case, then the plaintiffs have failed to show that they were injured at all, much less that they suffered the concrete injury required for RICO standing.

In addition, at the time of the injuries, the plaintiffs were notified by Mobil that it was a subscriber to Texas's workers' compensation system, chose not to opt-out, and recovered from Mobil on a no-fault basis for their various injuries. Thus, despite the plaintiffs' boilerplate damages allegations, it is hard to see how they received less than they were entitled to. *Cf. Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (dismissing plaintiffs' RICO claims based on fraud because plaintiffs' conclusional allegations of injury failed to show that the plaintiffs received less than what they bargained for).

Moreover, this cause of action seems to stretch the bounds of RICO far beyond its intended purpose. *See, e.g.*, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001) (reiterating that RICO is targeted primarily at organized crime). It may be that RICO's standing requirement that a plaintiff be "injured in his business or property" does not extend this far. 18 U.S.C. § 1964(c). At least one court has suggested that federal law should determine whether a given property interest, recognized by state law, rises to the level of RICO "business or property." *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997); *see also Price*, 138 F.3d at 607 ("And even though courts may look to state law to determine, for RICO purposes, whether a property interest exists, it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO." (citations omitted)). If the federal threshold for "business or property" depends on the statutory purpose, then it seems clear that the instant RICO claims are meritless. *See DeMauro*, 115 F.3d at 96 (suggesting that the threshold does depend on RICO's purpose).

MOTION FOR JUDICIAL NOTICE IS DENIED.